**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Kalin Andrew DANIELS, Defendant–**
**Appellant.**

**No. 08CA2586.**

Colorado Court of Appeals,
Div. V.

Dec. 10, 2009.

John W. Suthers, Attorney General, John Seidel, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Michael J. Heaphy, P.C., Michael J. Heaphy, Vail, Colorado, for Defendant–Appellant.

Opinion by Judge GABRIEL.

Defendant, Kalin Andrew Daniels, appeals his judgment of conviction for second degree assault-causing serious bodily injury. The victim of the assault suffered a fractured rib and a lacerated spleen. Defendant asserts that neither of these injuries amounted to "serious bodily injury," as defined by section 18–1–901(3)(p), C.R.S.2009, because the prosecution failed to show that (1) the victim's broken rib was of the second or third degree or (2) the lacerated spleen involved a *substantial* risk of death or protracted loss or impairment of the function of that organ. As an apparent matter of first impression in Colorado, we conclude that any break or fracture is sufficient to establish "serious bodily injury" under section 18–1–901(3)(p). Accordingly, we hold that the evidence was sufficient to sustain defendant's conviction, and we need not reach the question of whether the evidence concerning the victim's lacerated spleen was also sufficient to establish the requisite serious bodily injury.

## I.  Background

Taken in the light most favorable to the prosecution, the evidence at trial established the following facts:

On March 27, 2008, after a visit from their landlord, the defendant and the victim, who was his live-in girlfriend, argued over, among other things, issues concerning their past due rent. The argument ended when the victim walked away and defendant punched her in the lower back.

The victim then ran to a neighbor's house, where she was having difficulty breathing and crying in pain. She told the neighbor that defendant had hit her, and the neighbor called 911. An ambulance was dispatched, but the victim refused to go to the hospital.

The next morning, the victim awoke in significant pain, and her grandmother took her to the hospital. At the hospital, the victim told the emergency room doctor who was treating her that she had been assaulted. Various tests revealed that the victim had a fracture to the ribs of the left flank, where she had been hit, as well as a grade three, or moderately severe, splenic laceration, which was bleeding internally.

The victim was admitted to the intensive care unit (ICU), where she was monitored for increasing signs of illness, discomfort, or loss of blood, which would have required removal of her spleen. She, however, recovered after several days without the need for surgery.

For her part, the victim testified that although she had told her neighbors and the emergency room doctor, among others, that her injuries resulted from an assault by defendant, she was not telling the truth when she made these allegations. Rather, she claimed at trial to have lied previously to get revenge on defendant. She further testified that she actually was injured in a fall from the deck of her home.

At the conclusion of the prosecution's case, defendant moved for judgment of acquittal on the second degree assault charge. The court denied this motion. Subsequently, the jury, apparently rejecting the victim's attempted retraction of her prior accusations against defendant, convicted defendant of, among other things, second degree assault.

Defendant now appeals his conviction.

## II.  Standard of Review

When a party challenges the sufficiency of the evidence, "a reviewing court must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt." *People v. Valdez,* 56 P.3d 1148, 1151 (Colo.App.2002). The evidence can be either direct or circumstantial, but it must be both substantial and sufficient to support the determination of guilt. *Id.* "It is the duty of the fact finder in a criminal case to determine the credibility of the witnesses, to consider what weight should be given to all parts of the evidence, and to resolve conflicts, inconsistencies, and disputes in the evidence." *Id.*

### III. Serious Bodily Injury

■ As relevant here, a person commits second degree assault when, "[w]ith intent to cause bodily injury to another person, he causes serious bodily injury to that person or another." § 18–3–203(1)(g), C.R.S.2009. "Serious bodily injury," in turn, is defined as

> bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, a substantial risk of protracted loss or impairment of the function of any part or organ of the body, or breaks, fractures, or burns of the second or third degree.

§ 18–1–901(3)(p).

■ Defendant asserts that the prosecution failed to establish that the victim's broken rib was of the second or third degree, which, defendant claims, was required to prove serious bodily injury under section 18–1–901(3)(p). Although defendant cites no case law in support of his position, and although no Colorado appellate court appears to have addressed this issue directly, we now hold that "of the second or third degree" in section 18–1–901(3)(p) refers only to burns and not to breaks or fractures. Accordingly, we conclude that *any* break or fracture is sufficient to establish "serious bodily injury," and thus the evidence here was sufficient to support defendant's assault conviction.

Statutory interpretation is a question of law that we review de novo. *People v. Jaramillo,* 183 P.3d 665, 671 (Colo.App.2008). Our primary purpose in statutory interpretation is to ascertain and give effect to the intent of the General Assembly. *Id.* We first look to the language of the statute, giving words and phrases their plain and ordinary meaning. *Id.* We read words and phrases in context, and construe them according to their common usage. *Id.* When a statute does not define its terms but the words used are terms of common usage, we may refer to dictionary definitions to determine the plain and ordinary meanings of those words. *People v. Janousek,* 871 P.2d 1189, 1196 (Colo. 1994).

■ In addition, we must interpret a statute in a way that best effectuates the purpose of the legislative scheme. *Moffett v. Life Care Centers,* 187 P.3d 1140, 1143 (Colo. App.2008), *aff'd,* 219 P.3d 1068 (Colo.2009). When a court construes a statute, it should read and consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all of its parts. *Id.* In doing so, a court should not interpret the statute so as to render any part of it either meaningless or absurd. *Id.* at 1144.

■ If the statute is unambiguous, we look no further. *Id.* If a statute is ambiguous, however, then we may consider prior law, legislative history, the consequences of a given construction, and the underlying purpose or policy of the statute. *Id.*

Applying these principles here, we note initially that it is not common and ordinary usage to speak of second or third degree breaks or fractures, as opposed to second or third degree burns. Although our own research has revealed a few isolated references to degrees of fractures in medical literature, the several medical dictionaries that we have consulted do not refer to degrees of breaks or fractures, although they discuss numerous types of fractures (e.g., "complicated" fractures, "compound" fractures, "impacted" fractures, "incomplete" fractures, and "pilon" fractures). *See, e.g., Am.Jur. Proof of Facts 3d Attorney's Illustrated Medical Dictionary* F40–F45 (2002 & Supp. July 2008); *Stedman's Medical Dictionary* 686–88 (26th ed.1995).

In contrast, medical and nonmedical dictionaries alike routinely refer to the various degrees of burns. *See, e.g., Am.Jur. Proof of Facts 3d Attorney's Illustrated Medical Dictionary,* at B38–B39; *Stedman's Medical Dictionary,* at 251; *Webster's Third New International Dictionary* 299 (2002).

Accordingly, giving the words and phrases of section 18–1–901(3)(p) their ordinary meaning and construing them according to their common usage, we conclude that the General Assembly intended "breaks, fractures, or burns of the second or third degree" to mean breaks or fractures, on the one hand, and burns of the second or third

degree, on the other. *Cf. People v. Tall-whiteman*, 124 P.3d 827, 836 (Colo.App.2005) (stating in dicta and without explanation that serious bodily injury "could be anything from a minor fracture to a substantial risk of death").

Our conclusion in this regard is consistent with the structure of section 18–1–901(3)(p) as a whole. In particular, we note that prior to 1985, "serious bodily injury" was defined as "bodily injury which involves a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the function of any part or organ of the body." Ch. 121, sec. 1, § 40–1–1001(3)(p), 1971 Colo. Sess. Laws 414. Thus, the phrase "substantial risk of" applied only to "death." *People v. Sheldon*, 198 Colo. 519, 521, 602 P.2d 869, 870 (1979).

In 1985, however, before the phrase "breaks, fractures, or burns of the second or third degree" was added, the statute was amended to repeat the phrase "a substantial risk of" in both the second and third clauses of the definition. Ch. 149, sec. 1, § 18–1–901(3)(p), 1985 Colo. Sess. Laws 664. This amendment suggests to us that when the General Assembly sought to have a modifier apply to each term in a series in this statute, it did so expressly. When the General Assembly later amended the statute to add "breaks, fractures, or burns of the second or third degree," however, it did not include the phrase "of the second or third degree" after "breaks" or "fractures." This confirms our view that "of the second or third degree" modifies only "burns." Ch. 73, sec. 8, § 18–1–901(3)(p), 1991 Colo. Sess. Laws 405. Indeed, to construe the statute otherwise would require us to interpret the first half of the definition of "serious bodily injury" one way and the second half a different way. Because we must interpret a statute giving consistent, harmonious, and sensible effect to all of its parts, *see Moffett*, 187 P.3d at 1143, we reject such a construction.

For these reasons, we conclude that any break or fracture is sufficient to establish "serious bodily injury" under section 18–1–901(3)(p). Accordingly, we hold that the victim's broken rib in this case constituted "serious bodily injury," and, thus, we reject de-fendant's argument that the prosecution failed to establish "serious bodily injury" at trial. In light of our determination, we need not reach defendant's remaining arguments on appeal.

IV. Conclusion

For these reasons, the judgment is affirmed.

Judge CONNELLY concurs.

Judge GRAHAM specially concurs.

Judge GRAHAM specially concurring.

I write separately because, unlike the majority, I see no need to reach a question of statutory interpretation regarding "breaks, fractures, or burns of the second or third degree." § 18–1–901(3)(p), C.R.S.2009. Here, there was a substantial risk of the removal of the victim's spleen and supporting testimony which, in my view, conclusively established that the victim suffered a serious bodily injury.

The evidence adduced at trial established that the victim suffered a grade three laceration or rupture of the spleen and was bleeding internally. She was hospitalized and placed in the intensive care unit for several days while her blood counts were monitored in order to determine whether she required surgery to remove her spleen. The testimony of a physician established that the spleen function was impaired enough to subject her to risk of death from the internal bleeding. He also testified that patients who suffer grade three ruptures are administered fluids intravenously and sometimes blood transfusions. Without intensive care, monitoring, and stabilization, patients with grade three spleen lacerations face a risk of dying.

The statute here unambiguously defines serious bodily injury as including "bodily injury which, either at the time of the actual injury or at a later time, involves ... a substantial risk of protracted loss *or impairment of* the function of *any part or organ* of the body." § 18–1–901(3)(p) (emphasis added). Whether the facts here were sufficient to establish that the victim had suffered a serious bodily injury was properly submitted

to the jury. *People v. Thompson,* 748 P.2d 793, 794 (Colo.1988).

Reviewing the testimony and evidence in the record as we are required to do, in the light most favorable to the prosecution, *Mata–Medina v. People,* 71 P.3d 973, 983 (Colo.2003), I conclude that there was ample evidence to support the jury's finding that the victim suffered a serious bodily injury on the basis of her ruptured spleen.