2012 COA 221

**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Kirk Mitchell CITO, Defendant–Appellee.**

**No. 12CA1411.**

Colorado Court of Appeals, Div. VI.

Dec. 27, 2012.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2012.

Mitchell R. Morrissey, District Attorney, Ilene P. Buchalter, Deputy District Attorney, Denver, Colorado, for Plaintiff–Appellant.

Law Office of Natalie L. Decker, LLC, Natalie L. Decker, Littleton, Colorado, for Defendant–Appellee.

Opinion by Judge GABRIEL.

¶ 1 In this appeal by the People from the district court's order dismissing various theft by deception charges against the defendant, Kirk Mitchell Cito, we must determine the meaning of section 16–5–401(4.5), C.R.S.2012. That statute provides, in pertinent part, that "[t]he period within which a prosecution must be commenced shall begin to run upon discovery of the criminal act" for, among other offenses, theft. § 16–5–401(4.5)(c), C.R.S.2012

¶ 2 As a matter of first impression, we conclude that the phrase "discovery of the criminal act" in this statute refers to the point at which the victim or the state knew or through the exercise of reasonable diligence should have known of the facts establishing the criminal act at issue. We further conclude that, here, the criminal act was theft by deception, not merely the act of obtaining the money.

¶ 3 Because the district court did not apply this standard, we vacate that court's dismissal order and remand for further proceedings.

## I. Background

¶ 4 In 2006, Cito, a veterinarian, was hired as the hospital director for an animal hospital. Each month, he sent to the hospital's certified public accountant (CPA) a packet of documents that included, among other things, a list of the expenses that he had incurred and checks that he had written on the hospital's behalf, receipts for charges that he had made to the hospital's credit card, and other documents supporting the listed expenses. The CPA then compiled the information and entered it into a computerized accounting program, and she prepared for the hospital's owner a monthly report based on the information that Cito had provided.

¶ 5 In February 2011, the owner expressed concern to the CPA about the information that Cito had provided in his monthly packets. Accordingly, the CPA went back through the packets that Cito had provided over the prior five years and, among other things, reconciled Cito's time sheets, the hours that he had earned for so-called personal time off, and payroll records. Upon completion of this process, the CPA concluded that Cito had not been truthful in the documentation that he had submitted. Specifically, Cito was entitled to additional compensation for any unused personal time off. He was not entitled to such additional compensation, however, if he actually used the personal time. The CPA determined that Cito had paid himself approximately $53,700 for unused personal time off, even though he had actually taken the time off and, thus, was not entitled to receive such payments.

¶ 6 Based on this information, on December 5, 2011, Cito was charged with ten counts of theft by deception in violation of section 18–4–401(1) and (4), C.R.S.2012. Four of those counts, and a portion of a fifth count, alleged thefts committed more than three years before the charges were filed.

¶ 7 Cito moved to dismiss those five counts, arguing that they were barred by the three-year statute of limitations set forth in section 16–5–401(1)(a), C.R.S.2012.

¶ 8 In response, the prosecution argued that (1) pursuant to section 16–5–401(4.5), for charges of theft, the limitations period does not commence until the date of discovery; (2) here, the theft was not discovered until February 2011; and (3) therefore, all of the charges were timely filed.

¶ 9 After an evidentiary hearing, the district court rejected the prosecution's argument, reasoning that under section 16–5–401(4.5), "discovery of the criminal act" had occurred at the time Cito received the payments from the hospital. Specifically, the court stated:

> [T]he question is whether the victim, [the hospital], discovered the criminal act, which is the obtaining of the money by Dr. Cito at a later time than when ... the money was obtained, and the evidence at the hearing was undisputed that the obtaining of the money involved in those counts was discovered and known immediately upon the obtaining of the money, that every penny obtained by Dr. Cito was known as it was obtained through a careful and formal process of internal reporting and something in the nature of auditing ..., and all of the information surrounding all of those payments was provided to and known by [the hospital] at the time those payments were obtained.
>
> And, consequently, it is not accurate that the criminal act involved in [the] counts [at issue] was not discovered until February of 2011, and those counts must be dismissed under the statute of limitations.

¶ 10 The prosecutor then asked the court to clarify its ruling, and the following discussion ensued:

> [PROSECUTOR]: The Court's ruling is indicating that because the victims knew that they were giving this money to the defendant, they therefore had discovery of it.
>
> THE COURT: Yes.
>
> [PROSECUTOR]: Okay. And so the Court is disregarding that the victims did not know that he was lying to them during that time period.
>
> THE COURT: Well, I actually would also find—I wouldn't put it that way, but I would find that questions were asked and issues were raised during the time period and that all of the information that was available in February 2011 was available every month along the way.
>
> But the main legal finding[,] conclusion[,] is that discovery of the criminal act in the case of theft means discovery that the money went out the door.
>
> . . . .
>
> [PROSECUTOR]: ... The statute of limitations says, if the date of discovery was this date—
>
> THE COURT: Discovery of what?
>
> [PROSECUTOR]: Discovery of the theft.
>
> THE COURT: No. Discovery of the criminal act.
>
> [PROSECUTOR]: And the criminal act has more than just obtaining the money.
>
> THE COURT: It's obtaining the money with a certain mental state.
>
> [PROSECUTOR]: By deception. They are indicating that they were deceived....
>
> THE COURT: I understand your argument, but I disagree.
>
> . . . .
>
> THE COURT: ... I'm basing this [ruling] on my determination as a matter of law of what the criminal act is, and the criminal act was obtaining.

¶ 11 The court thus dismissed the four charges alleging thefts that were purportedly completed more than three years before the charges were filed (the court did not dismiss the fifth count, because most of the acts alleged in that count occurred within the applicable limitations period). As to the dismissed charges, the court's minute order summarized,

> All information regarding the alleged thefts that are the subjects of these counts was provided to, known to, and discovered by the alleged victim at or about the times the payments were obtained by [Cito]. They were not first discovered in February 2011.

¶ 12 The People now appeal.

## II. Discussion

¶ 13 The People contend that the district court erred in ruling that "discovery of the criminal act" under section 16–5–401(4.5) occurred at the time Cito obtained money as a result of his submitting his monthly financial packets. They claim that this ruling ignored the fact that the theft was by deception and that the hospital did not actually discover the

deception until February 2011. We agree that the district court's interpretation of the statute was incorrect. We do not, however, fully agree with the People's apparent alternative interpretation.

### A. Rules of Statutory Construction

¶ 14 The meaning of the phrase "discovery of the criminal act" in section 16–5–401(4.5) presents an issue of statutory construction that we review de novo. *See People v. Daniels,* 240 P.3d 409, 411 (Colo.App.2009). Our primary purpose in statutory construction is to ascertain and give effect to the intent of the General Assembly. *Id.* We first look to the language of the statute, giving words and phrases their plain and ordinary meaning. *Id.* We read words and phrases in context and construe them according to their common usage. *Id.*

¶ 15 In addition, we must interpret a statute in a way that best effectuates the purpose of the legislative scheme. *Id.* When a court construes a statute, it should read and consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all of its parts. *Id.* In doing so, a court should not interpret the statute so as to render any part of it either meaningless or absurd. *Id.*

¶ 16 If the statute is unambiguous, we look no further. *Id.* If the statute is ambiguous, however, then we may consider legislative history, prior law, the underlying purpose or policy of the statute, and the consequences of a given construction. *Id.* "A statute is ambiguous when it 'is capable of being understood by reasonably well-informed persons in two or more different senses.'" *Jefferson Cnty. Bd. of Equalization v. Gerganoff,* 241 P.3d 932, 935 (Colo.2010) (quoting 2A Norman J. Singer & J.D. Shambie Singer, *Statutes & Statutory Construction* § 45:2, at 13 (7th ed. 2007)).

### B. Ambiguity

¶ 17 As an initial matter, we conclude that the phrase "discovery of the criminal act" is reasonably susceptible of several different interpretations. For example, the term "discovery" can be read in a subjective sense, that is, to refer to when the victim or the state actually discovered the criminal act. *See Black's Law Dictionary* 533 (9th ed. 2009) (defining "discovery" as "[t]he act or process of finding or learning something that was previously unknown"). The term can also be read in an objective sense, however, to refer to when a person discovered or reasonably should have discovered the criminal act. *See id.* (defining "discovery rule," in pertinent part, as "[t]he rule that a limitations period does not begin to run until the plaintiff discovers (or reasonably should have discovered) the injury giving rise to the claim"; "[t]he discovery rule usu[ally] applies to injuries that are inherently difficult to detect").

¶ 18 Moreover, the phrase "discovery of the criminal act" can reasonably be read to require subjective knowledge that the crime at issue was committed, or mere knowledge of the acts that would have alerted a reasonable person that a crime was committed, whether or not the person recognized that the acts, in fact, constituted a crime.

¶ 19 And the phrase "criminal act" is also reasonably susceptible of various interpretations. For example, that phrase can be construed to refer solely to the actus reus, and not the mens rea, of a crime. *See Swift v. Fitchburg Mut. Ins. Co.,* 45 Mass.App.Ct. 617, 700 N.E.2d 288, 292, 295 (1998). It also can be construed, however, to refer to all elements required for conviction, including the mens rea. *See id.* at 295; *see also In re Larson,* 340 B.R. 444, 448–49 (Bankr.D.Mass. 2006) (noting different definitions of "criminal act"), *aff'd sub nom. Larson v. Howell,* No. Civ. 06–11662–RWZ, 2007 WL 1444093 (D.Mass. May 15, 2007) (unpublished memorandum of decision), *aff'd,* 513 F.3d 325 (1st Cir.2008).

¶ 20 Accordingly, we conclude that section 16–5–401(4.5) is ambiguous and thus look to legislative history, prior law, the underlying purpose of the statute, and the consequences of a given construction. *See Daniels,* 240 P.3d at 411.

### C. Tools of Statutory Construction

¶ 21 In terms of legislative history, we note that section 16–5–401(4.5) was enacted as part of two omnibus crime bills. *See* Ch. 73,

sec. 7, § 16–5–401(4.5), 1992 Colo. Sess. Laws 400; Ch. 73, sec. 3, § 16–5–401(4.5), 1991 Colo. Sess. Laws 404. In our review of the applicable legislative history, we found no specific discussions as to what the General Assembly intended by the phrase "discovery of the criminal act." Two witnesses from the Colorado District Attorneys Council who testified in support of the provision, however, noted that it was directed toward white collar crimes that frequently take time to discover because they are buried in financial statements or computer printouts and, thus, are difficult to detect immediately. *See* Hearings on H.B. 1078 before the H. Judiciary Comm., 58th Gen. Assemb., 2d Sess. (Jan. 23, 1992) (testimony of Bonnie Benedetti); Hearings on H.B. 1086 before the S. Judiciary Comm., 58th Gen. Assemb., 1st Sess. (Feb. 20, 1991) (testimony of Ray Slaughter).

¶ 22 Accordingly, the legislative history suggests that a victim's receipt from the defendant of volumes of information in which a pertinent fact might be buried does not alone suffice to establish the requisite discovery of the criminal act. Moreover, as applicable to theft by deception, the legislative history suggests that the "criminal act" to be discovered subsumes *both* the obtaining or exercising control over something of value *and* the fact that the defendant did so by deception. Thus, the legislative history reflects concern that the fact of the deception can be buried in financial statements or computer printouts, making the "criminal act" difficult to detect (as the present case shows, a defendant's obtaining or exercising control over the property at issue is frequently not itself difficult to detect). To the extent that the district court here suggested that, for purposes of section 16–5–401(4.5), a court need only look to the obtaining of the property without considering the deception, we disagree with that interpretation.

¶ 23 As to the prior law, the parties have not cited, and we have not found, Colorado case law construing a provision like the one at issue here (i.e., an accrual provision relating to the statute of limitations in a criminal case). In civil cases, however, Colorado courts have long, and with apparent consistency, interpreted the term "discovery," when used in the context of claim accrual provisions, to refer to the point at which the aggrieved party knew or in the exercise of reasonable diligence should have known of his or her claim.

¶ 24 Although we acknowledge that rules that apply in civil cases do not always translate well to criminal cases, we believe that the civil cases are at least informative here. For example:

- A prior version of the statute of limitations for civil fraud claims provided that such claims accrued "after the discovery by the aggrieved party, of the facts constituting such fraud." Gen. L. § 1682 (1877). Our supreme court construed "discovery by the aggrieved party" to refer to the point at which the aggrieved party "might with ordinary care and attention have seasonably detected [the fraud]." *Pipe v. Smith*, 5 Colo. 146, 159 (1879); *see also First Interstate Bank of Denver, N.A. v. Berenbaum*, 872 P.2d 1297, 1301 (Colo. App.1993) (construing the pre–1986 version of the same statute, which was substantively identical to the statute discussed in *Pipe*, and holding, "The limitations period commences when the defrauded person has knowledge of facts which, in the exercise of proper prudence and diligence, would enable the person to discover the fraud perpetrated against that person.").

- A prior version of the statute of limitations for medical malpractice claims did not specify when such claims accrued. *See* Ch. 190, sec. 1, § 87–1–6, 1963 Colo. Sess. Laws 687. Our supreme court nonetheless employed the "discovery rule" and held that such causes of action accrued when the plaintiff "discover[ed] or, in the exercise of reasonable diligence, should have discovered the doctor's negligence." *Owens v. Brochner*, 172 Colo. 525, 532, 474 P.2d 603, 607 (1970).

- Subsequently, the Colorado Revised Statutes were amended, and as part of those amendments, the General Assembly expressly codified the "discovery rule" in section 13–80–108(1), C.R.S.

2012. Notably, however, the Colorado Governmental Immunity Act (CGIA) was neither then nor thereafter similarly amended to incorporate the discovery rule. Thus, the CGIA continued to provide that the time for filing a written notice of a claim began running upon "discovery of the injury." § 24-10-109(1), C.R.S.2012. Notwithstanding the General Assembly's failure to amend the CGIA to incorporate the discovery rule, however, our supreme court held that the term "discovery" in the above-described CGIA provision refers to that rule. *Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 923 (Colo.1993). Thus, the court held that the term "discovery" in the CGIA means "known or should have been known by the exercise of reasonable diligence." *Id.*

¶ 25 Case law also tends to support the view that the phrase "criminal act," as applicable to the theft at issue here, is not limited to the act of obtaining the money received, but rather also includes the deception. *Cf. Larson,* 340 B.R. at 448–50 (citing different definitions of "criminal act," each of which required both the actus reus and the mens rea, although the court declined to conclude that "criminal act" required a conviction); *Swift,* 700 N.E.2d at 295 (rejecting an insurer's argument that the phrase "criminal act" in a policy exclusion referred only to the actus reus and not the mens rea).

¶ 26 The purposes of sections 16–5–401 generally and section 16–5–401(4.5) in particular support interpreting "discovery of the criminal act" here to refer to the point at which the victim or the state knew or through the exercise of reasonable diligence should have known of the theft by deception.

¶ 27 Our supreme court has stated that criminal statutes of limitation like section 16–5–401 serve the following purposes:

(1) to protect individuals from defending themselves against stale charges; (2) to prevent punishment for acts committed in the remote past; and (3) to insure that accuseds are informed of the decision to prosecute and the general nature of charges with sufficient promptness to allow them to prepare their defenses before evidence of their innocence is weakened by age.

*People v. McKinney,* 99 P.3d 1038, 1042 (Colo.2004).

¶ 28 The goal of section 16–5–401(4.5), in turn, is

to extend the limitations period for crimes that are susceptible to remaining undetected for extended periods of time, so that prosecution of such crimes will not be foreclosed as a result of concealment. Indeed, without the discovery tolling provision, our Criminal Code would provide surreptitious defendants a windfall for successfully concealing criminal conduct from their victims, contrary to the General Assembly's intent.

*Id.* at 1044–45 (citations omitted).

¶ 29 Reading the goals of these statutes together reveals a dual legislative purpose of requiring the prosecution to bring claims promptly while at the same time allowing some leeway for crimes that are susceptible of being concealed. To allow the prosecution to delay asserting claims until a victim or the state subjectively knows of the criminal act, however, would risk defeating these dual purposes. Specifically, such an interpretation would allow a prosecutor to extend his or her time in which to file charges, sometimes for a lengthy period, based merely on the victim's statement that he or she did not subjectively know of the crime. This would be true even if the victim knew every fact that would have alerted an objectively reasonable person that a crime had been committed. Such an interpretation would be absurd, and we must avoid such interpretations. *See Daniels,* 240 P.3d at 411.

¶ 30 Moreover, to allow such a delay in bringing charges would sanction the prosecution of stale charges, allow punishment for acts committed in the remote past, and hinder defendants' ability to prepare their defenses before evidence of their innocence is weakened by age, precisely what section 16–5–401 is intended to avoid. *See McKinney,* 99 P.3d at 1042. In addition, allowing such a delay would provide a windfall to victims and prosecutors who are dilatory in their investigations.

¶ 31 Accordingly, we conclude that the phrase "discovery of the criminal act" in section 16–5–401(4.5) refers to the point at which the victim or the state knew or through the exercise of reasonable diligence should have known of the facts establishing the crime at issue, which here included both the obtaining of the money and the deception. Such a conclusion is consistent with the language, legislative history, and purposes of the above-described statutory scheme, as well as with how other jurisdictions have interpreted similar language in their own criminal statutes of limitation. *See, e.g., People v. Zamora*, 18 Cal.3d 538, 134 Cal.Rptr. 784, 557 P.2d 75, 92 n. 26 (1976) (noting that the statute of limitations for grand theft accrued upon "discovery" of the theft, and concluding that the prosecution was thus required to plead, among other things, the date the offense was discovered and the lack of *both* actual *and* constructive knowledge of the offense prior to the date of discovery); *State v. Wilson*, 573 N.W.2d 248, 254 (Iowa. 1998) (holding that "discovery," for purposes of the statute of limitations for criminal fraud, occurs "when the authorities know or should know in the exercise of reasonable diligence that there is probable cause to believe a criminal fraud has been committed").

### III. Conclusion and Remand Order

¶ 32 For these reasons, the order is vacated, and the case is remanded to the district court with instructions that that court reconsider Cito's motion to dismiss in light of the statutory construction described herein. We leave to the district court's discretion whether to hear additional evidence as to when the hospital or the state knew or through the exercise of reasonable diligence should have known of the alleged thefts by deception. If this question can be resolved on the basis of undisputed facts, then the district court may do so before trial. If, however, the determination of this question depends on the resolution of disputed facts, then the issue must be submitted to the jury with appropriate instructions. *See People v. Cullen*, 695 P.2d 750, 751 (Colo.App.1984) (noting that when the determination of the court's jurisdiction depends on the resolution of disputed facts, the issue must be submitted to the jury with appropriate instructions); *see also People v. Verbrugge*, 998 P.2d 43, 44 (Colo.App.1999) (noting that the statute of limitations in a criminal case is jurisdictional).

Judge LICHTENSTEIN and Judge KAPELKE * concur.