Colorado Court of Appeals Opinions || December 17, 2015


Colorado Court of Appeals -- December 17, 2015
2015 COA 175. No. 12CA2540. People v. Garner.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 175

 
 



 Court of Appeals No. 12CA2540
 Adams County District Court No. 10CR1565
 Honorable Mark D. Warner, Judge


 The People of the State of Colorado,

 Plaintiff-Appellee,

 v.

 James Joseph Garner,

 Defendant-Appellant.


 JUDGMENT AFFIRMED

 Division IV
 Opinion by JUDGE GRAHAM
 RomÃ¡n and Vogt*, JJ., concur

 Announced December 17, 2015


 Cynthia H. Coffman, Attorney General, Jillian J. Price, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

 Douglas K. Wilson, Colorado State Public Defender, Rachel C. Funez, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

 *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, Â§ 5(3), and Â§ 24-51-1105, C.R.S. 2015.

 Â 


 Â¶1Â Â Â Â Â Â Â  Defendant, James Joseph Garner, appeals the judgment of conviction entered on a jury verdict finding him guilty of two counts of attempted reckless manslaughter, one count of first degree assault, and one count of reckless second degree assault. We affirm.

 
 I. Background
 
 Â¶2Â Â Â Â Â Â Â  According to the Peopleâs evidence, C.A.D. and his brothers R.A.D. and A.A.D. were celebrating C.A.D.âs birthday at a bar. Defendant, his girlfriend Jaime Velasquez, and approximately four other individuals were also at the bar. During the night, a male from defendantâs group approached C.A.D. and asked him whether he belonged to a gang. C.A.D. said he did not. Shortly after this encounter, C.A.D. left the bar to go home.
 
 Â¶3Â Â Â Â Â Â Â  However, C.A.D. returned to the bar with his friend Gabriel Reyes to give his two brothers a ride home. Before the group left, R.A.D. went to the bathroom. On his way back from the bathroom, someone from defendantâs group pushed R.A.D. into a table. During the ensuing chaos, defendant shot at R.A.D., grazing his wrist. Defendant then turned, shot, and injured both C.A.D. and A.A.D. After the shooting, defendant and his group fled through theÂ back door. Defendantâs glasses, spattered with his blood, were found on the floor of the bar. Also, a bar employee found Velasquezâs cell phone containing pictures of defendant and Velasquez taken at the bar. These photos were used to locate and identify defendant.


 
 Â¶4Â Â Â Â Â Â Â  Before trial, no witness was able to positively identify defendant from a photo lineup. However, at trial, all three brothers identified defendant as the shooter. The defense argued at trial that defendant was not the shooter.
 
 Â¶5Â Â Â Â Â Â Â  Defendant was found guilty and sentenced to thirty-two years in the custody of the Department of Corrections. II. In-Court Identifications
 
 Â¶6Â Â Â Â Â Â Â  Defendant first contends that his right to due process and the requirements of various rules of evidence were violated when the court allowed the brothers to make impermissibly suggestive in-court identifications after failing to make a pretrial identification. We disagree.
 
 A. Standard of Review
 
 Â¶7Â Â Â Â Â Â Â  Reviewing the constitutionality of in-court identification procedures is a mixed question of law and fact. We give deferenceÂ to the trial courtâs finding of fact while conclusions of law are reviewed de novo. Bernal v. People, 44 P.3d 184, 190 (Colo. 2002).


 
 Â¶8Â Â Â Â Â Â Â  We review the admission of first time, in-court show-up identifications by considering whether the identification is the product of constitutionally impermissible suggestive circumstances. People v. Monroe, 925 P.2d 767, 775 (Colo. 1996).
 
 Â¶9Â Â Â Â Â Â Â  We review evidentiary rulings for an abuse of discretion. People v. Clark, 2015 COA 44, Â¶14.
 
 B. Applicable Law
 
 Â¶10Â Â Â Â Â Â Â  An in-court identification, made by a witness who attended an illegal, pretrial lineup, is permissible only after there is a determination that the in-court identification is based upon a source independent of the improper lineup identification. This determination is made by the trial court, considering the totality of the circumstances. United States v. Wade, 388 U.S. 218, 242 (1967); Monroe, 925 P.2d at 770. The harm sought to be precluded is the likelihood that the in-court identification is the product of the illegal lineup and not the observation of the defendantâs wrongful act. Monroe, 925 P.2d at 774.


 Â¶11Â Â Â Â Â Â Â  In considering the totality of the circumstances the trial court should review five factors to gauge the likelihood of misidentification and apply an exclusionary rule: (1) the opportunity of the witness to view the accused; (2) the witnessâs degree of attention; (3) the accuracy of the witnessâs prior description; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Neil v. Biggers, 409 U.S. 188, 199 (1972). This analysis deals with the exclusion of impermissible pretrial identifications and the in-court identifications that follow them. United States v. Domina, 784 F.2d 1361, 1368 (9th Cir. 1986).

 
 Â¶12Â Â Â Â Â Â Â  The majority of courts addressing this issue have determined that Neil v. Biggers does not apply to in-court identifications. See Byrd v. State, 25 A.3d 761, 765 (Del. 2011) (remedy for alleged suggestiveness is cross-examination and argument); State v. King, 934 A.2d 556, 559-60 (N.H. 2007) (fact finder can observe witness during in-court identification process and evaluate the reliability the identification); State v. Lewis, 609 S.E.2d 515, 517-18 (S.C. 2005) (remedy for alleged suggestiveness is cross-examination and argument).


 Â¶13Â Â Â Â Â Â Â  Colorado has rejected a rule that one-on-one show-up identifications are per se violations of due process. Monroe, 925 P.2d at 773. Indeed, People v. Monroe made it clear that â[t]he exclusionary rule has not been extended to in-court identifications alleged to be suggestive simply because of the typical trial setting.â Id. at 775. It is the duty of the jury to assess the reliability of identification evidence unless there is a very substantial likelihood of misidentification. Id.

 
 C. Analysis
 
 Â¶14Â Â Â Â Â Â Â  The parties dispute whether this issue was properly preserved for appeal. Here, all three brothers made in-court identifications of defendant as the shooter. The first identification was made late in the afternoon, and the court adjourned roughly ten minutes after this identification. The following morning, before questioning continued, defendant objected to the identification as an impermissible one-on-one show-up identification. The court allowed the People to submit case law on the issue and took it under advisement. Defendant contemporaneously objected to the next two in-court identifications, and the court overruled both objections.


 
 Â¶15Â Â Â Â Â Â Â  The People contend that defendant waived any objection because he failed to ask the trial court to make a final ruling regarding the identifications. However, it is unclear from the record whether the trial court did in fact make a final ruling on the objection.[1] Because the record is not clear as to the trial courtâs intentions in overruling the objection and defendant clearly contemporaneously objected to the second and third in-court identifications, we conclude that this issue was preserved.
 
 1. Lack of Pretrial Identifications
 
 Â¶16Â Â Â Â Â Â Â  During the policeâs investigation and at trial, the brothers gave varying descriptions of the shooter and his clothing. The brothersâ description of the events leading up to the shooting was also wide-ranging. As part of the investigation, the brothers had each been shown a photo lineup with the defendantâs picture prior to trial; however, at no point were the brothers given the opportunity to identify the defendant in an in-person lineup. None of the witnesses was able to definitively identify defendant as the shooter from the photos. C.A.D. was able to positively identify defendant as being present at the bar the night of the shooting, but could not confirm that he was the shooter. A.A.D. and R.A.D. were not able to identify defendant from the photos as being present at the bar the night of the shooting.


 
 2. Defendantâs Presence at the Bar
 
 Â¶17Â Â Â Â Â Â Â  While there were varying accounts and descriptions of the events on the night of the shooting, it was definitively established at trial that defendant was at the bar on the night of the shooting. First, defendantâs DNA was found on a pair of glasses found at the crime scene. Second, a bar employee testified that she saw defendant and Jaime Velasquez taking pictures together on Velasquezâs phone a short time before the shooting. That same employee found the phone on the floor following the shooting and, using the photos of defendant and Velasquez from the phone, the police created a bulletin to help locate defendant as a person of interest.
 
 3. In-Court Identifications
 
 Â¶18Â Â Â Â Â Â Â  At trial, each brother identified defendant as the shooter. Each identification took place while defendant was sitting at the defense table. Despite not having been able to identify defendant asÂ the shooter from the photo lineup, all three of the brothers were certain at trial that defendant was the individual who shot them. The following testimony by one of the brothers is typical of how the in-court identifications were made:
 
 [Prosecutor]: Now, Mr. [R.A.D.], do you see anybody here in the courtroom today who shot at you on that particular evening?
 
 [R.A.D.]: Can I point?
 
 [Prosecutor]: If you recognize somebody as the person who shot at you and the person who shot your brother [C.A.D.], yes, you can tell the Court or the jury where heâs seated and tell them an item of clothing he is wearing.
 
 [R.A.D.]: Right now?
 
 [Prosecutor]: Yes.
 
 [R.A.D.]: Heâs got a shirt thatâs blue in color.
 
 [Prosecutor]: And can you tell the jury where heâs seated? You can point to him if you need to.
 
 [R.A.D.]: Yeah. Itâs over there.
 
 [Prosecutor]: Let the record reflect the defendantâs been identified . . . .


 
 Â¶19Â Â Â Â Â Â Â  Although counsel contemporaneously objected to two of the identifications on the basis that they were one-on-one showups, there was no specific argument about what counsel contended wereÂ the constitutionally impermissible and suggestive circumstances other than the fact that these identifications occurred in the courtroom setting.


 
 Â¶20Â Â Â Â Â Â Â  One-on-one confrontations are viewed with disfavor because they tend to be suggestive and present greater risks of mistaken identification than a lineup. People v. Walker, 666 P.2d 113, 119 (Colo. 1983). But, one-on-one confrontations are not per se violations of due process. Id. An in-court identification is properly considered by the jury if it does not stem from a constitutionally defective identification procedure. Monroe, 925 P.2d at 771 (citing Coleman v. Alabama, 399 U.S. 1, 4-5 (1970)).
 
 Â¶21Â Â Â Â Â Â Â  Here, counsel argued that the brothers had been unable to identify defendant as the shooter prior to trial. While the inability of a witness to identify the defendant in a photographic lineup is relevant and certainly grist for cross-examination, it does not, as a matter of law, preclude him from making an identification upon seeing the defendant in court. People v. Horne, 619 P.2d 53, 57 (Colo. 1980); People v. Borrego, 668 P.2d 21, 23 (Colo. App. 1983). Instead, the previous inability to identify goes to the weight of his identification testimony rather than its admissibility. Horne, 619Â P.2d at 57; see also United States v. Brown, 200 F.3d 700, 707 (10th Cir. 1999) (victimâs identification of the defendants at trial, while the product of a suggestive procedure, occurred in the presence of the jury and the victim was fully and fairly cross-examined about the process and his previous inability to positively identify the defendants); United States v. Aigbevbolle, 772 F.2d 652, 654 (10th Cir. 1985) (failure to identify the defendant from the photo array pretrial reflected merely on the weight of her in-court identification rather than its admissibility).


 
 Â¶22Â Â Â Â Â Â Â  Defendant maintains that it would have been impossible for the brothers to all fail to identify defendant as the shooter in a photo lineup yet successfully identify him in court. That is certainly a fair argument. But as the cases hold, the previous failure to identify defendant is an issue that goes to weight of the identification and not the admissibility of the identification. Byrd, 25 A.3d at 767.
 
 âWhen the initial identification is in court, . . . [t]he [fact finder] can observe the witness during the identification process and is able to evaluate the reliability of the initial identification.â Domina, 784 F.2d at 1368 (citation omitted). In addition to affording the fact finder the opportunity to observe andÂ assess the identification itself, an initial in-court identification is subject to immediate challenge through cross-examination. Not only is counsel present, but the jury has full opportunity to view the circumstances and assess evidentiary worth.


 
 King, 934 A.2d at 560 (some citations omitted).
 
 Â¶23Â Â Â Â Â Â Â  Here, while the three brothersâ in-court identifications may have been the product of a suggestive procedure, we conclude that the trial court did not err in admitting the evidence.[2] The fact that the brothers could not identify defendant as the shooter using a photo lineup goes to the weight, not the admissibility of the in-court identifications. This was the first time since the shooting that the brothers had seen the defendant in person. At trial each brother was certain that defendant was the shooter. Each identification was done in the presence of the jury and the jurors were in the best position to assess the credibility of each brother. Indeed, defense counsel extensively cross-examined and impeached each of the brothers with their prior inconsistent statements and inability toÂ identify defendant as the shooter from the photo lineup. Because the jury had the opportunity to give the in-court identifications whatever weight it deemed appropriate and defendant was given a full and fair opportunity to cross-examine each of the in-court identifications, we conclude that his right to due process was not violated and the trial court did not err in admitting the in-court identifications.


 
 III. Prosecutorial Misconduct
 
 Â¶24Â Â Â Â Â Â Â  Defendant next contends that numerous instances of prosecutorial misconduct violated his right to a fair trial. We agree that there was one potential instance of misconduct, but conclude it does not require reversal of defendantâs conviction.
 
 A. Standard of Review and Applicable Law
 
 Â¶25Â Â Â Â Â Â Â  Prosecutors must ârefrain from improper methods calculated to produce a wrong conviction.â Wilson v. People, 743 P.2d 415, 418 (Colo. 1987) (citation omitted). In reviewing prosecutorial misconduct claims, âthe reviewing court engages in a two-step analysis.â Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). First, we âdetermine whether the prosecutorâs questionable conduct was improper based on the totality of the circumstances.â Id. In doing so, we âmust evaluate the severity and frequency of misconduct, any curative measures taken by the trial court to alleviate the misconduct, and the likelihood that the misconduct constituted a material factor leading to the defendantâs conviction.â People v. Hogan, 114 P.3d 42, 55 (Colo. App. 2004). The determination of whether a prosecutorâs words and actions amount to misconduct is generally left to the sound discretion of the trial court. Domingo-Gomez v. People, 125 P.3d 1043, 1049 (Colo. 2005); People v. Rhea, 2014 COA 60, Â¶42. Second, we consider whether such actions warrant reversal according to the proper standard of review. Wend, 235 P.3d at 1096.
 
 B. Preserved Contentions
 
 Â¶26Â Â Â Â Â Â Â  Defendant presents three instances of alleged misconduct in which a contemporaneous objection was made. âAs to preserved issues, the trial courtâs rulings on prosecutorial misconduct âwill not be disturbed by an appellate court in the absence of a gross abuse of discretion resulting in prejudice and a denial of justice.ââ Rhea, Â¶42 (quoting People v. Moody, 676 P.2d 691, 697 (Colo. 1984)). We review preserved errors for harmlessness. Wend, 235 P.3d at 1097.
 
 1.


 
 Â¶27Â Â Â Â Â Â Â  First, defendant contends the prosecutor misled the jury during his direct examination of the investigating detective. Specifically, defendant maintains the prosecutor misstated C.A.D.âs previous statements to police.
 
 Â¶28Â Â Â Â Â Â Â  We perceive no error. Defendant objected when the prosecutor began asking about C.A.D.âs previous interview with the police. In response, the court instructed the prosecutor to ask questions using âwhat was said in the transcript specifically.â Because the prosecutor asked questions quoting directly from C.A.D.âs previous interview we cannot conclude the prosecutor misled the jury and, thus, these questions were not improper.
 
 2.
 
 Â¶29Â Â Â Â Â Â Â  Next, defendant contends the prosecutor improperly asked the detective whether in-person lineups are more likely to produce an identification rather than a photo lineup without having given pretrial notice that the detective would offer expert testimony.
 
 Â¶30Â Â Â Â Â Â Â  The following exchange took place:
 
 [Prosecutor]: Have you had the opportunity to have in-person lineups done?
 
 [Detective]: Yes.
 
 [Prosecutor]: And based on your training and experience are those a preferred method to a photographic lineup?
 
 [Defense counsel]: Objection. This witness is not endorsed as an expert, this is 702 material. We donât have an expert endorsement.
 
 . . .
 
 [Court]: Well, I think the question was what he preferred and the jury can only use it for that purpose what this particular witness prefers. Iâll allow it, allow him to answer that question.
 
 . . .
 
 [Detective]: Yes, I prefer an in-person lineup. [Prosecutor]: Why is that?
 
 [Detective]: Because an individual during an in-person lineup can actually see more than whatâs in a photograph. They can see the height, the weight, the stature of the individual, the facial gestures, motion, things like that.
 
 [Prosecutor]: And based upon your personal experience, when you do an in-person lineup, are those â are you more likely to get an identification than in a photographic lineup?
 
 [Defense counsel]: Objection [Court]: Sustained


 Â¶31Â Â Â Â Â Â Â  We discern no error. The court sustained defense counselâs objection and did not allow the detective to answer whether in-person lineups were more likely to produce identifications. The initial exchange went to the detectiveâs personal preference and these questions were proper, because the detective, as a lay witness, had substantial experience conducting photo lineups.

 
 3.
 
 Â¶32Â Â Â Â Â Â Â  Last, defendant contends that the prosecutor improperly impeached defendantâs ex-girlfriend, Irma Cisneros, with a pending felony charge, which the Adams County District Attorney was also prosecuting. We discern no error.
 
 Â¶33Â Â Â Â Â Â Â  Here, outside the presence of the jury, defense counsel requested that the prosecution not be permitted to inquire about Cisnerosâ pending felony charge. Using the reasoning of Davis v. Alaska, 415 U.S. 308, 316 (1974), the court determined that the prosecution was able to inquire into the pending felony charge to show bias. The court limited questions that could be asked and did not allow the prosecution to bring up the specific charge of felony assault on a police officer. The prosecutor complied with theÂ limiting instructions and on cross-examination[3] asked, âyou are currently facing charges and being prosecuted by our office for other crimes?â Thus, we conclude it was proper to impeach Ms. Cisneros regarding her felony charge, and no misconduct occurred.


 C. Unpreserved Errors

 Â¶34Â Â Â Â Â Â Â  Defendant next presents roughly fifteen instances in which he contends the prosecutor committed reversible misconduct to which he did not contemporaneously object to. Because defendantâs remaining misconduct claims were not preserved, our review is for plain error. Wend, 235 P.3d at 1097. Prosecutorial misconduct rarely constitutes plain error. People v. Estes, 2012 COA 41, Â¶19. To warrant reversal, the âmisconduct must be flagrant or glaring or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.â People v. Weinreich, 98 P.3d 920, 924 (Colo. App. 2004), affâd, 119 P.3d 1073 (Colo. 2005).

 Â¶35Â Â Â Â Â Â Â  âDefense counselâs failure to object is a factor that may be considered in examining the impact of a prosecutorâs argument and may âdemonstrate defense counselâs belief that the live argument, despite its appearance in a cold record, was not overly damaging.ââ People v. Strock, 252 P.3d 1148, 1153 (Colo. App. 2010) (quoting People v. Rodriguez, 794 P.2d 965, 972 (Colo. 1990)).

 1.Â 

 Â¶36Â Â Â Â Â Â Â  Defendant first contends the prosecutor improperly injected her personal knowledge of outside evidence and bolstered the brothersâ credibility when she asked the detective, âAnd in your report did you include everything that they had said or just the additional information.â And, âWhen you wrote the report in that case, did you report everything that was said that day?â Defendant alleges that these questions implied that the brothers had been giving consistent statements when speaking to detectives. However, these questions merely established that the detectiveâs second report after interviewing a witness would not contain information that the witness had previously given. We are not persuaded that this line of questioning injected the prosecutorâs personal knowledge of outside evidence.

 2.Â 

 
 Â¶37Â Â Â Â Â Â Â  Defendant next claims the prosecutor improperly asked questions on redirect of the bar manager that misstated his previous testimony. At issue was whether the bar manager had seen what the shooter was wearing. During the exchange the prosecutor asked:
 
 [Prosecutor]: Now, the person who ran past you who was firing shots, can you please tell the jury what shirt he was wearing?
 
 [Bar manager]: He had a black shirt on. It was a black shirt kind of like this with a red stripe on the sleeve on this side.
 
 Later the prosecutor asked:
 
 [Prosecutor]: The person that you saw that ran by you with the black shirt and the red stripes on the sleeve, that was the person that you saw firing shots; right?
 
 [Bar manager]: No, I didnât see anybody shooting. As I was saying, the bar is high and I wasnât able to see, so I couldnât see their hands. I just saw him running past.
 
 On redirect examination defendant contends the prosecutor committed misconduct by asking:
 
 [Prosecutor]: The person that you saw come through the bar shooting with the black shirt with the red stripes, that person was with the group with the women?
 
 [Bar manager]: You know, that he was â the one causing the problems, yes. If he was the one that fired, I donât know. But that they all left together.
 
 . . . .
 
 [Prosecutor]: And you never saw the face of the person who was firing shots, just the shirt; right?
 
 [Bar manager]: Yes.


 
 Â¶38Â Â Â Â Â Â Â  We disagree that the prosecutorâs questions on redirect were improper. The bar manager first testified that the shooter had a black shirt with red stripes. The bar manager later testified he did not see the shooter. Thus, the prosecutorâs questions on redirect were proper given the inconsistent testimony and the varied answers already given.
 
 3.
 
 Â¶39Â Â Â Â Â Â Â  Defendant also contends the prosecutor, in multiple instances, improperly asked questions that implied a man described as ânorteÃ±o pelÃ³nâ had not previously been identified as the shooter. We conclude the prosecutorâs questions were proper. Defendant fails to point out any conclusive statements the brothers made that specifically identified the shooter as the ânorteÃ±o pelÃ³n.â Thus anyÂ questions clarifying witnessesâ statements were proper especially given the fact that many of the witnesses had given varied descriptions of the shooter on different occasions.


 
 Â¶40Â Â Â Â Â Â Â  Defendant also contends that the prosecutor improperly elicited testimony that interchanged the words âpelÃ³nâ and âbaldâ from witness statements. However, we find no misconduct because it was clearly established that pelÃ³n means âbaldâ in Spanish.
 
 4.
 
 Â¶41Â Â Â Â Â Â Â  Additionally, defendant asserts the prosecutor asked the detective a question that mischaracterized Gabriel Reyesâ testimony. The prosecutor asked, âDo you remember Gabriel Reyes testifying that a man came in moments after him with two guns and handed one to the defendant?â In his testimony Reyes used the word âshooterâ instead of âdefendant.â However, defense counsel objected to the question as leading. The court sustained the objection stating, âThis is closing argument stuff.â Although the prosecutor misstated the previous testimony, we perceive no misconduct because the detective never answered the question. Further, even if it was improper to misstate this testimony, we conclude this wasÂ not so flagrant or glaring or tremendously improper so as to rise to the level of plain error. See Rhea, Â¶71.


 
 5.
 
 Â¶42Â Â Â Â Â Â Â  Next, defendant states the prosecutor improperly attempted to discredit R.A.D.âs statements made to police the night of the shooting by implying an interpreter had not been present. We disagree that any misconduct occurred.
 
 Â¶43Â Â Â Â Â Â Â  First, R.A.D. confirmed that the interview with detectives was given with an interpreter present. Second, the detective confirmed that C.A.D.âs wife was helping translate. Third, the prosecutor only asked whether the detectives who interviewed R.A.D. were fluent in Spanish. Because the record does not support defendantâs contention, we find no misconduct.
 
 6.
 
 Â¶44Â Â Â Â Â Â Â  Defendant further argues the prosecutor improperly implied in questioning R.A.D. and the detective that R.A.D. had never said which of the three men was the shooter. Defendantâs own brief states this is technically true. Thus, we conclude the questions were proper.
 
 7.


 
 Â¶45Â Â Â Â Â Â Â  Moreover, defendant declares that the prosecutor elicited testimony that a bar employee never identified the man who came in after defendantâs group as the shooter. Defendant fails to point out specifically where in the record the bar employee identified the man who walked into the bar later as the shooter. Instead, the bar employee testified that shooting started right after the man walked into the bar and thus she believed he was the shooter. However, she also testified that she never saw the shooter. Therefore these questions clarifying witness statements were proper.
 
 8.
 
 Â¶46Â Â Â Â Â Â Â  Defendant also avers that, in questioning the detective, the prosecutor improperly misstated previous statements that A.A.D. had made to him during an interview. Specifically, the detective testified that he did not recall A.A.D. telling him that the man in glasses was not the shooter. We conclude these questions were proper. First, the prosecutor did not improperly lead the detective to answer that A.A.D. had not made the previous statements. Further, defense counsel impeached this testimony and elicited testimony from A.A.D. that he had in fact stated the man with glasses was not the shooter.


 
 9.
 
 Â¶47Â Â Â Â Â Â Â  Additionally, defendant says the prosecutor improperly pointed to C.A.D.âs and R.A.D.âs medical condition after the shooting to discredit their out-of-court identifications, but failed to bring this up again during other statements which supported the Peopleâs case. We conclude that the prosecutorâs actions were proper. The prosecution was highlighting a reason, as testified to, why the brothersâ statements might have been inconsistent. This is proper argument and no misconduct occurred. See Domingo-Gomez, 125 P.3d at 1048.
 
 10.
 
 Â¶48Â Â Â Â Â Â Â  Furthermore, defendant maintains that the prosecutor improperly encouraged the three brothersâ in-court identifications of defendant. However, each of the three in-court identifications followed the pattern of the sample testimony we have included above and was the product of witnesses who had been sequestered. Each witness pointed to or identified the defendant as the shooter prior to ever being asked to identify defendant as the shooter. Thus, we disagree that the prosecutor improperly encouraged the in-court identifications.


 11.

 
 Â¶49Â Â Â Â Â Â Â  Defendant contends the prosecutor improperly bolstered the brothersâ in-court identifications by using a hypothetical in closing argument. The prosecutor proposed that jury members would have a difficult time remembering what the other prosecutor was wearing during trial but would easily recognize her during a later face-to-face encounter. She used this comparison to argue that the brothers may not have recognized the photo of defendant but could have easily recognized him as the shooter during the face-to-face encounter.
 
 Â¶50Â Â Â Â Â Â Â  Defendant claims that the prosecutor had no good faith basis to argue that the brothers would be able to identify defendant as the shooter three years after the shooting.
 
 Â¶51Â Â Â Â Â Â Â  We discern no misconduct. During closing argument, counsel may employ rhetorical devices, engage in oratorical embellishment, and employ metaphorical nuances, insofar as they do not induce the jury to determine guilt based on passion or irrelevant issues. People v. Allee, 77 P.3d 831, 837 (Colo. App. 2003). During closing argument, prosecutors have wide latitude to address the strength and significance of evidence, as well as any reasonable inferencesÂ that may be drawn from the evidence. Domingo-Gomez, 125 P.3d at 1048.


 
 Â¶52Â Â Â Â Â Â Â  Rather than improperly misleading the jury the prosecutor may have been demonstrating the point that it can be much easier to recognize a person one has met or seen in the past as opposed to describing what that person was wearing at the time of the interaction. Further, it is a reasonable inference that the brothers would not be able to identify defendant from the photos yet would be able to identify him in court. See, e.g., Borrego, 668 P.2d at 23; see also United States v. Toney, 440 F.2d 590, 591 (6th Cir. 1971).
 
 12.
 
 Â¶53Â Â Â Â Â Â Â  Next, defendant contends that the prosecutor improperly implied through questioning the detective that, if the brothers had been asked to specifically identify the shooter from the lineup rather than being asked it they simply recognized anyone, they would have been able to identify defendant as the shooter.
 
 Â¶54Â Â Â Â Â Â Â  We disagree that the prosecutor committed misconduct. Throughout the trial it was clearly established that the brothers were unable to identify defendant as the shooter in any photo lineup. Defense counsel also established that C.A.D. was the onlyÂ witness who identified defendant as being present the night of the shooting. Thus, we cannot conclude that the prosecutor implied that the brothers would have identified defendant as the shooter if they had been asked that specific question.


 
 13.
 
 Â¶55Â Â Â Â Â Â Â  Defendant also claims that the prosecutor improperly made herself a witness by placing words into witnessesâ mouths. Because we have concluded that the above contentions of misstating witness testimony did not constitute prosecutorial misconduct, we also conclude that the prosecutor did not improperly make herself a witness.
 
 14.
 
 Â¶56Â Â Â Â Â Â Â  As well, defendant insists that the prosecutor improperly used the word lie during rebuttal closing argument when she stated:
 
 Is it possible that all three of these guys come in here and lie to you and tell you that theyâre 100 percent sure heâs the shooter and that theyâre all three willing to send an innocent person to get convicted of this? I would submit to you that its not even possible, but itâs certainly not reasonable.
 
 Â¶57Â Â Â Â Â Â Â  Prosecutorial use of the word âlieâ and the various forms of âlieâ are improper. Wend, 235 P.3d at 1096. In this instance theÂ prosecutor used the word âlieâ when hypothecating about the veracity of the three brothers as witnesses, and thus, we will assume it was improper.[4]


 
 Â¶58Â Â Â Â Â Â Â  In evaluating a prosecutorâs argument under the plain error standard, we must âfocus on the cumulative effect of the prosecutorâs statements using factors including the exact language used, the nature of the misconduct, the degree of prejudice associated with the misconduct, the surrounding context, and the strength of the other evidence of guilt.â Id. at 1098; see People v. McMinn, 2013 COA 94, Â¶60.
 
 Â¶59Â Â Â Â Â Â Â  In Wend, the prosecutor, during both opening and closing arguments, repeatedly used the words âlie,â âlies,â and âliarâ to describe the defendantâs various stories. Here, the prosecutor used the word âlieâ one time in an otherwise proper closing argument to question the motives not of the defendant but of material witnesses. Further, she did not suggest that they were lying; rather, she was arguing that they had no motive to lie. Moreover, the defendant didÂ not object to this statement at trial, and it may not have stood out to the jury. Viewing the comments in context and in light of all of the evidence, we conclude that the prosecutorâs single use of the word âlie,â even if inappropriate, was not so flagrantly, glaringly, or tremendously improper as to rise to the level of plain error. See Domingo-Gomez, 125 P.3d at 1051-52; People v. Herrera, 1 P.3d 234, 240-41 (Colo. App. 1999) (prosecutorâs comment that the defendant was lying was improper but did not constitute plain error).


 
 15.
 
 Â¶60Â Â Â Â Â Â Â  Finally, defendant contends that the prosecutor improperly implied that Irma Cisneros may have been present at the bar during the shooting despite knowing this was false. During direct examination, both A.A.D. and C.A.D. spontaneously identified Cisneros, who was sitting in the courtroom, as having been present the night of the shooting. However, Cisneros later testified that she and defendant had previously broken up and she was not with defendant at the bar. She further testified that the woman who was with defendant in the photos at the bar had caused the break-up. The prosecutor cross-examined her on this issue and inquired as toÂ why she had been present throughout the trial. The investigating detective also testified that there was no information confirming or denying Cisnerosâs presence at the bar.


 
 Â¶61Â Â Â Â Â Â Â  We conclude the prosecutorâs actions were not improper. Contrary to defendantâs contention, nothing in the record offers definitive proof that Cisneros was not present at the bar. Although she denied having been at the bar, two witnesses spontaneously identified her as having been present at the bar and she was present in the courtroom throughout the duration of the trial supporting defendant. Thus, it was proper for the prosecutor to explore this possibility.
 
 IV. Exhibit 25
 
 Â¶62Â Â Â Â Â Â Â  Defendant next contends that the trial court committed reversible error in admitting Exhibit 25, a report containing the data extracted from Velasquezâs cell phone found at the crime scene. Defendant argues that the data included text messages and photos that were irrelevant and unfairly prejudicial. We disagree.
 
 A. Standard of Review and Applicable Law
 
 Â¶63Â Â Â Â Â Â Â  A trial courtâs evidentiary ruling is reviewed for an abuse of discretion. Kaufman v. People, 202 P.3d 542, 553 (Colo. 2009).Â Trial courts have considerable discretion in determining the relevance, probative value, prejudicial impact, and ultimate admissibility of evidence. People v. Ibarra, 849 P.2d 33, 38 (Colo. 1993). We will not disturb a trial courtâs evidentiary ruling unless it is manifestly arbitrary, unreasonable, unfair, or based on a misapprehension of the law. People v. Carter, 2015 COA 24M, Â¶27; People v. Chavez, 190 P.3d 760, 765 (Colo. App. 2007).


 
 Â¶64Â Â Â Â Â Â Â  âEvidence which is not relevant is not admissible.â CRE 402. Evidence is relevant if it has âany tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.â CRE 401. Relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice. CRE 403. ââAll effective evidence is prejudicial in the sense that it is damaging to the party against whom it is being offered.ââ People v. Cardenas, 2014 COA 35, Â¶52 (quoting People v. Fasy, 813 P.2d 797, 800 (Colo. App. 1991)). In assessing the admissibility of evidence over a partyâs CRE 403 objection, âwe must assume the maximum probative value of the evidence and the minimum prejudice reasonably to be expected.â People v. Curtis, 2014 COA 100, Â¶49.


 
 B. Analysis
 
 Â¶65Â Â Â Â Â Â Â  Here, the cell phone data admitted contained a number of photos from the phone as well as one text message. The data on the phone was relevant to the identification of defendant and the other individuals present at the shooting. The collection of photos included pictures of defendant and Velasquez taken at the bar the night of the shooting. The bar employee who found the phone looked through it with police to see if pictures taken that night would help police identify individuals involved in the shooting. The judge admitted all photos from the phone, even the ones that might have appeared to have been taken on a different date, because the precise date of each photo was not known. Because the photos are relevant to the issue of identification we cannot conclude that the trial court abused its discretion in admitting them into evidence.
 
 Â¶66Â Â Â Â Â Â Â  Defendant further contends that, even if relevant, the probative value of the data was substantially outweighed by the danger of unfair prejudice. Specifically, defendant alleges that the photos of individuals making hand gestures were unfairlyÂ prejudicial because the jury could infer gang affiliations from the gestures. The court determined that the photos were not indicative of gang activity but that it would reconsider its ruling if there was testimony linking the hand gestures in the photos to gang affiliations. However, this testimony was never elicited and the court had no need to address the issue again. This speculative inference is not prejudicial enough to conclude that the trial court abused its discretion in admitting the photos.


 
 Â¶67Â Â Â Â Â Â Â  Finally, defendant alleges the text message included in the admitted report was unfairly prejudicial. Specifically, the text message sent from the phone on page eight of the report which stated âNa Wre @ cassâ hm!es cr!b.. Bt h!s G!tchs mak!nG dum Statements shes Gun Get smashedâ was unfairly prejudicial because of its violent nature. This bare and unintelligible text message was not interpreted for the jury nor was it tied to any evidence in the case. Therefore, it was irrelevant; but we find its admission was harmless. Moreover, the court addressed the potentially prejudicial text messages when it excluded page seven of the report that contained text messages forwarded from the Limon Correctional Facility. The probative value of the report was notÂ substantially outweighed by the danger of unfair prejudice. Thus we cannot conclude that the trial court abused its discretion in admitting Exhibit 25.


 V. Cumulative Error

 Â¶68Â Â Â Â Â Â Â  Finally, defendant contends that his conviction should be reversed due to cumulative error. We disagree.

 Â¶69Â Â Â Â Â Â Â  Although an appellate court may find that individual errors do not require reversal, numerous irregularities may in the aggregate show the absence of a fair trial. People v. Jenkins, 83 P.3d 1122, 1130 (Colo. App. 2003). However, cumulative error applies only if the trial court committed numerous errors. A defendantâs mere assertions of error are insufficient to warrant reversal. People v. Blackwell, 251 P.3d 468, 477 (Colo. App. 2010).

 Â¶70Â Â Â Â Â Â Â  Here, we have rejected all but a portion of one of defendantâs claims of error as harmless. The remaining asserted errors did not singly or cumulatively deny defendant a fair trial. He thus is not entitled to reversal based on a theory of cumulative error.

 VI. Conclusion

 Â¶71Â Â Â Â Â Â Â  The judgment is affirmed.

 JUDGE ROMÃN and JUDGE VOGT concur.


 [1] After the second and third objections, the trial court made no record of whether the issue was still under advisement.

 [2] We similarly reject the bare evidentiary arguments made under CRE 403, 602, and 701. Defendant did not make specific objections under those rules, and on the basis of our ruling that the identifications were proper, we see no abuse of discretion by the trial court under those evidentiary rules.

 [3] In addition, we note that it was defense counsel who first brought up the pending charges on direct examination.

 [4] We give the benefit of the doubt to defendant, recognizing that simply using the word âlieâ is not improper unless it is used to characterize testimony.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || December 17, 2015


Back