24CA0854 Peo v Tonelli 04-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0854
La Plata County District Court No. 21CR492
Honorable Suzanne F. Carlson, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Nicolo Anthony Tonelli,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE BROWN
Freyre and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 2, 2026

---

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Adrienne R. Teodorovic, Alternate Defense Counsel, Windsor, Colorado, for Defendant-Appellant

¶ 1    Defendant, Nicolo Anthony Tonelli, appeals the judgment of conviction entered on a jury verdict finding him guilty of manslaughter and tampering with physical evidence. We affirm.

## I.    Background

¶ 2    Beginning in 2019, Tonelli and Jamison McMaster, the victim, rented the lower portion of a detached garage on property owned by Donna Brand. Brand lived in the main house, and her groundskeeper lived on the upper floor of the garage. Tonelli and McMaster grew marijuana on the property and sold it.

¶ 3    People who had known McMaster for at least a few years reported that his demeanor changed around the summer of 2021. McMaster's behavior became more sporadic, he acted paranoid, and he discussed "bizarre things." He also began to carry around a five-foot metal pole, which he anthropomorphized and named "Pepperoncini."

¶ 4    On the evening of November 21, Brand's grandson noticed that McMaster had left "Pepperoncini" in the main house right in front of Brand's bedroom door. Brand's grandson grabbed it, threw it outside into the front yard, and told McMaster not to leave it lying around on the floor. McMaster became upset and told all the

1

people hanging out at the house to line up outside. No one wanted to comply with this request, and the situation escalated until Tonelli ended up hitting McMaster in the head with a rock, and the group split up. While Brand's grandson was trying to clean up the cut on McMaster's head, Tonelli came out of the house with a gun, which Brand's grandson took away from him.

¶ 5 The following morning, Tonelli and McMaster argued over a box of marijuana and money. McMaster wanted to deliver the marijuana to a buyer, but Tonelli did not trust him to do it, and the two fought again. At Tonelli's request, Brand's grandson hid the box of marijuana in the main house. McMaster tried to get into the main house, but the doors were locked, so he banged on the doors and the windows. From inside, Brand pointed her shotgun at McMaster to stop him from trying to get in. When he persisted, she called the police around 10:50 a.m. to have McMaster removed from the property.

¶ 6 When the police arrived about twenty minutes later, everyone was calm, and no one seemed like they wanted to talk. The police told Brand that she needed to obtain an eviction order if she wanted McMaster to leave her property, and they left after about fifteen to

twenty minutes.  After the police left, Brand went to obtain eviction paperwork.

¶ 7    Around 12:45 p.m., McMaster found the box of marijuana inside the main house, carried it outside, and was walking toward one of the vehicles parked outside when Tonelli shot him. McMaster died immediately.  Tonelli had a summer worker help him move the box of marijuana from where it fell near McMaster's body to the worker's car parked at the end of Brand's driveway.  Tonelli threw his gun into the woods while they were walking to the worker's car.  After they put the box into the car, Tonelli returned to the house.

¶ 8    Sometime after 1 p.m., Brand returned to the house, and Tonelli asked her to help him get McMaster to the hospital.  The two put McMaster's body into Brand's car.  Brand started to drive down her driveway but turned the car around because she knew McMaster was dead and there was no reason to go to the hospital. Brand parked her car in front of her garage with McMaster's body still inside.  Around 3 p.m., the groundskeeper returned to the property and found Brand and Tonelli still sitting in Brand's car. Brand told the groundskeeper what happened, and the

groundskeeper told Brand to go inside the house and Tonelli to get out of the car while he called 911.

¶ 9 The prosecution charged Tonelli with second degree murder, tampering with physical evidence, and tampering with a deceased body. After a thirteen-day trial, a jury found Tonelli guilty of a lesser-included charge of manslaughter and tampering with physical evidence.

## II. Prosecutorial Misconduct

¶ 10 Tonelli contends that the district court erred by allowing the prosecutor to commit misconduct during closing argument. We disagree.

### A. Standard of Review and Applicable Law

¶ 11 We engage in a two-step analysis when reviewing claims for prosecutorial misconduct. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances. *Id.* Second, we decide whether such actions warrant reversal under the proper standard. *Id.*

¶ 12 While prosecutors can use every legitimate means to bring about a just conviction, they have a duty to avoid using improper

methods designed to obtain an unjust result. *Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005). We evaluate claims of improper argument in the context of the argument as a whole and in light of the evidence before the jury. *People v. McMinn*, 2013 COA 94, ¶ 60.

¶ 13 The parties agree that this issue is unpreserved, so we will reverse only for plain error. *People v. Garner*, 2015 COA 175, ¶ 34, *aff'd*, 2019 CO 19. For an error to be plain, it must be both obvious and substantial. *Hagos v. People*, 2012 CO 63, ¶ 14. For prosecutorial misconduct to constitute plain error, it "must be flagrant or glaringly or tremendously improper, and it must so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *McMinn*, ¶ 58. "Prosecutorial misconduct in closing argument rarely constitutes plain error." *People v. Smalley*, 2015 COA 140, ¶ 37.

## B. Additional Background

¶ 14 At trial, Tonelli asserted that he acted in self-defense based on McMaster's increasingly unpredictable and aggressive behavior in the months and weeks leading up to the incident and, more

5

specifically, the night before and the morning of the shooting. The

district court instructed the jury, in relevant part, that

> Mr. Tonelli was legally authorized to use
> deadly physical force upon another person
> without first retreating if:
>
> 1.    he used that deadly physical force in
> order to defend himself from what he
> reasonably believed to be the use or imminent
> use of unlawful physical force by that other
> person, and
>
> 2.    he reasonably believed a lesser degree of
> force was inadequate, and
>
> 3.    he had a reasonable ground to believe,
> and did believe, that he was in imminent
> danger of being killed or of receiving great
> bodily injury[.]

The court also instructed the jury on the provocation and initial

aggressor exceptions to self-defense.

¶ 15    Defense counsel asked the court to also instruct the jury as

follows:

> "Imminent" in the context of self-defense is
> defined as near at hand, impending or on the
> point of happening.
>
> "Imminent" in the context of self-defense is
> also defined as likely to happen without delay.

The court declined to give the instruction, reasoning that "people

know what 'imminent' means."

¶ 16    During closing argument, the prosecutor discussed Tonelli's theory of self-defense, reminding the jury that it was the prosecution's burden to disprove that Tonelli "used that deadly physical force in order to defend himself from what he reasonably believed to be the use or imminent use of unlawful physical force by that other person."  The prosecutor continued,

> Key words in here.  A reasonable belief, unlawful physical force, but most key, most key, in this prong is that word "imminent," because "imminent" means what's happening right now.  It's not really relevant what happened this morning or the night before.  "Imminent" means what is happening in that moment and is deadly physical force justified right then.

The prosecutor later added,

> "Imminent" means right now, right then, in the moment.  And in that moment, once again, there is no Pepperoncini.  Mr. McMaster is leaving.  He's unarmed.  He's possibly carrying that box [of marijuana] when he was shot in the side.

> The only imminent threat that Mr. McMaster posed to [Tonelli] in that moment in time was financial.  The threat was everyone wanted him to leave, but now he was leaving but he was taking that box with him . . . .  That was the threat.  It wasn't a threat of great or serious bodily injury and it certainly wasn't imminent.

¶ 17    Defense counsel did not object to the prosecutor's remarks.

Instead, in closing argument, defense counsel said that

> [a] person can use deadly physical force without first retreating in order to defend himself if he reasonably believes a lesser degree of force is inadequate and he has a reasonable ground to believe, and does believe, that he's in imminent danger of being killed or of receiving great bodily injury . . . .

Defense counsel explained,

> They say there's no evidence of any justification that [Tonelli] had to shoot [McMaster], it has nothing to do with what happened earlier or the day before or in the weeks and month[s] before. But they are wrong. It has everything to do with that.
>
> And it's not the law in Colorado that you're looking at that one single moment in time. The law says you can't look at this with tunnel vision and the law says that you can't look at this in a vacuum because this is about [Tonelli]'s reasonable belief. Reasonable is determined by what a reasonable person with [Tonelli]'s experience and circumstances in that specific situation would do and think, and his reasonable belief, based on the totality of the circumstances, all of [Tonelli]'s experiences and knowledge at the time. It's about the context of the situation.
>
> . . .
>
> Contrary to the prosecutor's contentions, [McMaster]'s behavior in the months, weeks, and days prior to the shooting are absolutely

8

relevant as to how [Tonelli] perceived the situation and the threat that [McMaster] presented to him at that moment. All of [McMaster]'s previous behaviors for the previous six months, his drug use, his head injury, his aggression, his unpredictability, his paranoia, his steep mental decline, all of those are relevant to [Tonelli]'s reasonable belief.

### C. The Prosecutor Did Not Commit Reversible Error

¶ 18    Tonelli contends that the district court plainly erred because it allowed the prosecutor to commit misconduct by misstating the definition of "imminent." Specifically, Tonelli contends that the prosecutor erroneously defined "imminent" as something happening "right now, right then, in the moment," rather than something "about to happen" based on all the facts and Tonelli's perception of those facts. We are not persuaded for two reasons.

¶ 19    First, any error was not obvious. As the district court correctly instructed the jury, under Colorado law, for a defendant's use of deadly physical force to be legally justified as self-defense, he must reasonably believe that someone is in "imminent danger" of being killed or seriously injured and that he must defend against the use or "imminent use" of unlawful physical force by the victim. § 18-1-704(1), (2)(a), C.R.S. 2025. "'Imminent' has not been

9

expressly defined by statute or by Colorado case law in the context of self-defense." *People v. Yaklich*, 833 P.2d 758, 760 (Colo. App. 1991). And Tonelli cites no authority concluding otherwise; rather, he concedes that "the law does not instruct on what 'imminent' means."

¶ 20    For an error to be "plain," it "must be so clear-cut, so obvious, that a trial judge should be able to avoid it without benefit of objection." *People v. Pollard*, 2013 COA 31M, ¶ 39. Generally, for an error to be obvious, it must contravene a statute or rule, a well-settled legal principle, or established Colorado case law. *Campbell v. People*, 2020 CO 49, ¶ 25. In the absence of a statute, rule, or established Colorado case law defining "imminent" only as Tonelli defines it, or declaring the prosecutor's definition erroneous, we perceive no obvious error. *See id.*

¶ 21    We are not persuaded otherwise by Tonelli's argument that case law clearly provides that the dictionary definition of a term controls in the absence of a statutory or common law definition and that the prosecutor plainly erred by not strictly adhering to Tonelli's

proposed dictionary definitions.[1]  There are several different dictionary definitions, including those Tonelli cites on appeal.  For example, Tonelli cites Black's Law Dictionary defining "imminent" as "threatening to occur immediately; dangerously impending." Black's Law Dictionary 894 (12th ed. 2024).  And the People cite Merriam-Webster Dictionary defining "imminent" as "ready to take place; happening soon."  Merriam-Webster Dictionary, https://perma.cc/JBM6-JSKX.

¶ 22    The prosecutor's explanation of the term during closing argument did not veer far from these definitions.  Thus, we cannot conclude that the prosecutor's definition of "imminent" was so clearly wrong that the district court should have interjected to correct it without any objection from defense counsel.  *See Hagos*, ¶ 14; *Pollard*, ¶ 39; *see also Domingo-Gomez*, 125 P.3d at 1048 (prosecutors have "wide latitude in the language and presentation style used to obtain justice"); *People v. Samson*, 2012 COA 167,

---

[1] We note that Tonelli does not assert on appeal that the district court erred by declining to instruct the jury with his proposed definitions.

11

¶ 30 (reviewing courts afford prosecutors "the benefit of the doubt when their remarks are ambiguous or simply inartful").

¶ 23    Second, in any event, we do not perceive anything improper about the prosecutor's conduct.  The prosecutor opposed Tonelli's proposed instruction on the dictionary definitions of "imminent," the district court declined to give the proposed instruction, and then the prosecutor and defense counsel both argued in closing about what "imminent" meant.  The prosecutor argued that something is "imminent" if it is "happening right now" or "in that moment," while defense counsel argued that what happened in the preceding weeks, months, days, and hours informed Tonelli's perception of "the threat that [McMaster] presented to him *at that moment.*"  (Emphasis added.)  These explanations of what is "imminent" are not that different.  And it is not as though the court adopted a specific definition of "imminent" that the prosecutor disregarded in closing argument.

¶ 24    To the extent Tonelli contends that the district court plainly erred by allowing the prosecutor to encourage the jury to disregard anything that occurred the evening before and the morning of the shooting when considering whether Tonelli reasonably believed he

had to use deadly physical force in self-defense, we are not persuaded. True, the jury was required to consider the totality of the circumstances when evaluating the reasonableness of Tonelli's belief. *See Kaufman v. People*, 202 P.3d 542, 551 (Colo. 2009). But we do not view the prosecutor's challenged remarks as instructing the jury otherwise.

¶ 25 Instead, we understand the prosecutor to have argued that events occurring months, weeks, days, and hours before the incident should not have given Tonelli a reasonable belief that McMaster was about to use unlawful physical force in the moments before Tonelli shot him. The prosecutor essentially argued that one cannot use deadly force in response to a threat that is hours or days old and then claim to have acted in self-defense. *See People v. Suazo,* 867 P.2d 161, 169 (Colo. App. 1993) (affirming the district court's denial of a defense of others instruction because no evidence supported "a claim that [the defendant] reasonably believed that further violence towards his mother was, under any definition, 'imminent'" when the victim, who had hit the defendant's mother, was seeking medical treatment after the "fracas that had taken place a few minutes earlier").

13

¶ 26    But even if a reasonable jury would have understood the prosecutor's remarks as suggesting that it should disregard the totality of the circumstances when considering the reasonableness of Tonelli's belief — which would have been improper, *see Kaufman*, 202 P.3d at 551; *see also McMinn*, ¶ 62 (explaining, in relevant part, that a prosecutor may not misstate or misinterpret the law) — we doubt the jury would have heeded that fleeting suggestion. The trial was thirteen days long. The jury heard extensive testimony regarding McMaster's increasingly bizarre and dangerous conduct leading up to the shooting. And defense counsel clearly argued that all of McMaster's behavior was relevant to Tonelli's reasonable belief in that moment. Under these circumstances, we are not persuaded that the jury would have disregarded the totality of the circumstances in its deliberations. Thus, we conclude that any prosecutorial misconduct did not undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See McMinn*, ¶ 58.

### III.    Disposition

¶ 27    We affirm the judgment of conviction.

JUDGE FREYRE and JUDGE SCHUTZ concur.

14