21CA1579 Peo v Teague 04-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 21CA1579
City and County of Denver District Court No. 21CR47
Honorable Martin F. Egelhoff, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

David A. Teague,

Defendant-Appellant.

JUDGMENT AFFIRMED AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE TAUBMAN*
Tow, J., concurs
Dunn, J., concurs in part and dissents in part

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 24, 2025

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Casey Mark Klekas, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Defendant, David A. Teague, appeals his convictions entered on a jury verdict finding him guilty of first degree assault causing serious bodily injury by means of a deadly weapon and menacing. We affirm and remand for clarification of the mittimus.

## I.    Background

¶ 2    In September 2020, Slade Mills and his girlfriend, Lindsey Rasmussen, were walking on South Broadway in Denver near their apartment when a man, later identified as Teague, approached them asking for help.  Although Teague initially asked Rasmussen to call 911, he changed his mind, asked her to call his sister instead, and gave Rasmussen his sister's phone number.  Teague then became agitated and told Rasmussen to delete his sister's phone number, which Rasmussen did.

¶ 3    After Rasmussen deleted the phone number, Teague lunged toward Rasmussen, attempting to grab the phone.  As Teague lunged, Mills stepped between Rasmussen and Teague.  Mills dodged Teague's first swing, but Teague lunged a second time and hit Mills in the head.  Teague was carrying a messenger or tool bag. Mills saw an object fall to the ground after being struck in the head.

Rassmussen saw a screwdriver during the assault, and a neutral eyewitness saw a screwdriver on the ground after the assault.

¶ 4    Mills and Rasmussen ran to a restaurant down the block, where Mills collapsed on the ground just outside the front door and several patrons came to his aid. Mills was transported to Denver Health, received "quite a few" stitches, and stayed overnight.

¶ 5    Mills's blood and Teague's DNA were later found on the screwdriver.

¶ 6    Police created a six-person photo array that included Teague's photo, but neither Mills nor Rasmussen could identify Teague with absolute certainty in the days following the assault. However, both identified Teague's photo as one of two suspects from the photo array.

¶ 7    The prosecution charged Teague with (1) attempted first degree murder of Mills; (2) first degree assault of Mills; and (3) felony menacing of Rasmussen. The jury acquitted Teague of attempted murder but convicted him of first degree assault and misdemeanor menacing. The trial court sentenced Teague to thirty years in the custody of the Department of Corrections on the assault conviction and six months in jail on the menacing

2

conviction. Due to either a recording error or malfunction with the courtroom recording equipment, no transcript of the sentencing hearing could be created.

## II.    Analysis

### A.    The Paramedic's Testimony

¶ 8    Teague argues the trial court abused its discretion in allowing lay opinion testimony of the paramedic who treated Mills because he should have been qualified as an expert. Specifically, he argues the paramedic offered a medical diagnosis without having been qualified as an expert. We are not persuaded.

#### 1.    Standard of Review

¶ 9    We review a court's evidentiary ruling regarding lay testimony for an abuse of discretion. *People v. Chavez*, 190 P.3d 760, 765 (Colo. App. 2007). An abuse of discretion occurs when the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *Id.*

#### 2.    Analysis

¶ 10    Lay opinion testimony is limited to opinions that are (1) rationally based on the perception of the witness; (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (3) not based on scientific, technical, or other

specialized knowledge within the scope of CRE 702. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise. CRE 702.

¶ 11 To determine whether an opinion is based on specialized knowledge, we must determine whether ordinary citizens can be expected to know the information provided or have the experiences that form the basis of the witness's opinion. *People v. Rincon*, 140 P.3d 976, 983 (Colo. App. 2005). Thus, we must consider whether the opinion results from reasoning found during everyday life experience or if the witness is offering testimony that could not be offered without specialized experience, knowledge, or training. *Venalonzo v. People*, 2017 CO 9, ¶ 2, 388 P.3d 868, 870-71; *People v. Ramos*, 2012 COA 191, ¶¶ 12-13, 396 P.3d 21, 25. The basis for the opinion is the crux of the inquiry.

¶ 12 Here, the responding paramedic testified that he felt bones crunching when he pressed on Mills's head wound. The trial court overruled Teague's objection that this was expert testimony presented by a lay witness.

4

¶ 13    We are not persuaded that the trial court abused its discretion by allowing the paramedic's testimony.  The paramedic testified about his perception of Mills's injury.  Specifically, the paramedic described what the wound looked like, its location, and what he felt when he pressed on it.  His perception was similar to what any ordinary person could have perceived and described: "[The wound was on] the top of his head," "I remember seeing some blood from the wound site," and "I felt some bones crunching."

¶ 14    Accordingly, the basis of the paramedic's testimony was his perception of the wound site, so he provided information that did not depend on his expertise in the medical field.  Thus, the trial court did not abuse its discretion in allowing the paramedic's testimony as lay opinion.

B.    Serious Bodily Injury and Deadly Weapon

¶ 15    Teague next contends that the trial court erred by concluding that sufficient evidence supported the first degree assault elements of serious bodily injury and use of a deadly weapon.  We address and reject each contention in turn.

### 1. Standard of Review

¶ 16    An acquittal must be entered when the evidence is insufficient to support a jury's guilty verdict. *People v. Cardenas*, 2014 COA 35, ¶ 21, 338 P.3d 430, 433. We review the record de novo to determine whether the evidence before the jury was sufficient in both quantity and quality to sustain the conviction. *Montes-Rodriguez v. People*, 241 P.3d 924, 927 (Colo. 2010); *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). We "consider 'whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.'" *McCoy v. People*, 2019 CO 44, ¶ 63, 442 P.3d 379, 392 (quoting *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010)).

### 2. Serious Bodily Injury

¶ 17    Teague argues that the prosecution failed to prove Mills suffered a serious bodily injury because the paramedic's testimony was insufficient to establish a serious bodily injury under the statute. We are not persuaded.

¶ 18    As relevant here, the statute provides that serious bodily injury is an injury that, "either at the time of the actual injury or at a later time, involves a substantial risk of death . . . or breaks, fractures, or burns of the second or third degree." § 18-1-901(3)(p), C.R.S. 2020.

¶ 19    Teague focuses on *People v. Vigil*, 2021 CO 46, 488 P.3d 1150, where the supreme court held that the defendant did not suffer a serious bodily injury because the victim's neck stab wound did not damage any vital structures. *Id.* at ¶ 38, 488 P.3d at 1157. The *Vigil* court analyzed the victim's injury under *Stroup v. People*, 656 P.2d 680 (Colo. 1982), where the supreme court held that the facts of the actual injury control the risk of death, not the risk generally associated with an injury. *Id.* at 685.

¶ 20    Teague's reliance on *Vigil*'s analysis under *Stroup* is misplaced. In *Vigil*, the evidence showed there was no substantial risk of death. No such evidence exists here. In contrast, we focus on Mills's actual injury suffered and whether it created a break or fracture, not whether his injury produced a substantial risk of death.

¶ 21    Here, Teague argues that the prosecution relied on the theory that serious bodily injury occurred under the "breaks" or "fractures"

theory, but the prosecution did not present evidence of any broken bones or fractures. However, the paramedic's testimony that we discussed above describing the injury as visible to the naked eye and that he felt bones crunching was sufficient to support the breaks and fractures statutory component. Further, Mills was loaded onto a stretcher and spent the night in the hospital, where he received "quite a few" stitches in his head.

¶ 22    In addition, Mills described that he blacked out after being struck in the head. He also described how he felt "dizzy" and "just collapsed on the ground" following the assault.

¶ 23    Different divisions of this court have held that serious bodily injury "could be anything from a minor fracture to a substantial risk of death." *People v. Tallwhiteman*, 124 P.3d 827, 836 (Colo. App. 2005); *see also People v. Daniels*, 240 P.3d 409, 410 (Colo. App. 2009) ("[W]e conclude that any break or fracture is sufficient to establish 'serious bodily injury'. . . .").

¶ 24    We acknowledge that this is a close call. But our supreme court has said that the standard of review for sufficiency of the evidence challenges is a "relatively lenient" one. *Gorostieta v. People*, 2022 CO 41, ¶ 2, 516 P.3d 902, 903. Thus, taken in the

aggregate, and viewing the evidence in the light most favorable to the prosecution, it was sufficient to conclude that Mills suffered a serious bodily injury.

### 3. Deadly Weapon

¶ 25    Teague also argues the prosecution failed to prove beyond a reasonable doubt that he used a screwdriver during the assault. We disagree.

¶ 26    Under section 18-1-901(3)(e)(II), C.R.S. 2024, a deadly weapon is any weapon, device, or instrument that, in the manner it is used or intended to be used, can produce death or serious bodily injury. Colorado employs a two-step inquiry to determine whether an object is a deadly weapon. First, the object must be used or intended to be used as a weapon. *People v. Lee*, 2020 CO 81, ¶ 24, 476 P.3d 351, 356. Second, the object must be capable of causing serious bodily injury. *Id.*

¶ 27    Here, Teague argues that the prosecution's evidence did not show that the screwdriver was actually used in the assault as a deadly weapon; rather, Teague contends that the evidence only showed that it was found on the ground and thus Teague could have simply dropped it.

¶ 28    Rasmussen testified that she saw the screwdriver in Teague's hand during the assault. Mills testified that he saw an object fall out of Teague's hand immediately after Teague struck his head. Additionally, a neutral eyewitness testified that she saw the screwdriver on the ground immediately following the assault. While Teague argues that neither Mills nor Rasmussen could say for sure that he or she saw the screwdriver before Teague used it to hit Mills, the prosecution presented considerable evidence from which the jury could infer that Teague struck Mills with the screwdriver. The jurors were also instructed that they could consider both direct and circumstantial evidence to reach their verdict. Accordingly, this evidence, together with reasonable inferences from the testimony, was sufficient for the jury to conclude that Teague used a screwdriver to assault Mills.

¶ 29    Next, we must examine whether the screwdriver could cause a serious bodily injury. *Id.* As discussed above, we have concluded that Mills suffered a serious bodily injury. Mills testified that Teague "threw a punch and [Mills] dodged that first one and then out of nowhere a second swing and [Mills] felt this bam, right to the side of [his] head and [Mills] went out, just completely out." Teague

also did not dispute during trial that a screwdriver could cause serious bodily injury. Thus, the above testimony and the reasonable inferences from it sufficed to establish that the screwdriver caused Mills's head injury. Therefore, both *Lee* prongs are satisfied, and the evidence supports the conclusion that the screwdriver was used as a deadly weapon.

### C. Rasmussen's In-Court Identification

¶ 30      Teague next argues that the trial court violated his constitutional rights by allowing Rasmussen to identify him for the first time in court after not being able to positively identify him in a prior lineup. We do not discern any constitutional violations.

### 1. Standard of Review

¶ 31      The constitutionality of an in-court identification procedure presents mixed questions of fact and law. *Bernal v. People*, 44 P.3d 184, 190 (Colo. 2002). We review the trial court's findings of fact for clear error and its legal conclusions de novo. *Id.*

### 2. Analysis

¶ 32      A defendant is denied due process when an in-court identification is based on an out-of-court identification that is "so suggestive as to render the in-court identification unreliable."

*People v. Godinez*, 2018 COA 170M, ¶ 56, 457 P.3d 77, 89 (quoting *People v. Borghesi*, 66 P.3d 93, 103 (Colo. 2003)). One-on-one show-up identifications are not per se due process violations. *People v. Monroe*, 925 P.2d 767, 773 (Colo. 1996). The exclusionary rule has not been extended in Colorado to prohibit allegedly suggestive in-court identifications simply because of the trial setting. *People v. Garner*, 2015 COA 175, ¶ 13, 439 P.3d 4, 8. Rather, it is the jury's duty to assess the reliability of identification evidence unless there is a substantial likelihood of misidentification. *Id.*

¶ 33 One-on-one identification procedures are historically viewed unfavorably because they tend to be suggestive. *People v. Walker*, 666 P.2d 113, 119 (Colo. 1983). However, an in-court identification may be properly considered by the jury if it does not stem from a constitutionally defective identification procedure. *Garner*, ¶ 19, 439 P.3d at 10; *Monroe*, 925 P.2d at 771.

¶ 34 Colorado follows the lead of other jurisdictions whose courts hold that, with respect to first-time in-court identifications, "the requirements of due process are satisfied in the ordinary protections of trial." *Garner v. People*, 2019 CO 19, ¶ 52, 436 P.3d

1107, 1117 (citation omitted). Colorado courts do not require prescreening of in-court identifications when a witness has failed to identify the defendant in a pretrial procedure. *Id.* at ¶ 65, 436 P.3d at 1119. Here, as noted, Rasmussen failed to identify Teague at a pretrial procedure. Additionally, during the in-court identification, Teague objected to Rasmussen's in-court identification. Further, Teague's counsel cross-examined Rasmussen about her in-court identification. The court also gave the jurors an opportunity to ask Rasmussen questions, and they elected to do so. Therefore, the trial court's procedures ensured that there was no likelihood of misidentification.

¶ 35    Thus, under the totality of the circumstances and considering the defense's objection, its cross-examination, and the jury's own question regarding Rasmussen's identification, the jury properly considered the in-court identification. Therefore, the court did not violate Teague's due process rights when it allowed Rasmussen's in-court identification.

### D.    Prosecutorial Misconduct

¶ 36    Teague argues that the prosecutor committed reversible misconduct in voir dire, opening statement, closing argument, and

13

rebuttal closing argument. While some of the prosecutor's statements may have been improper, they do not require reversal.

¶ 37     Preventing prosecutorial misconduct encompasses limitations on prosecutorial advocacy. Prosecutors may not use inflammatory language to encourage jurors to retaliate against a defendant or play on jurors' prejudices and are restricted to commenting on the evidence presented and reasonable inferences from the evidence. *See, e.g.*, *People v. Oliver*, 745 P.2d 222, 228 (Colo. 1987); *People v. Ferrell*, 613 P.2d 324, 326 (Colo. 1980).

¶ 38     Additionally, when reviewing a claim of prosecutorial misconduct, we engage in a two-step analysis, determining, first, whether the prosecutor's conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal. *People v. Marko*, 2015 COA 139, ¶ 204, 434 P.3d 618, 657, *aff'd on other grounds*, 2018 CO 97, 432 P.3d 607; *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010).

### 1.    Standard of Review

¶ 39     Whether a prosecutor's statements constitute misconduct is generally left to the trial court's discretion, and we will not disturb the trial court's rulings on alleged misconduct absent a showing of

14

an abuse of discretion. *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005); *People v. Walker*, 2022 COA 15, ¶ 27, 509 P.3d 1061, 1069.

¶ 40     We review preserved claims of prosecutorial misconduct under the nonconstitutional harmless error standard. *See Hagos v. People*, 2012 CO 63, ¶ 12, 288 P.3d 116, 119. Under this standard, we reverse only if the error substantially influenced the verdict or affected the fairness of the trial. *See id.*; *People v. Kern*, 2020 COA 96, ¶ 13, 474 P.3d 197, 201. Where a claim of error is not preserved by objection, we may reverse only if plain error occurred. *Hagos*, ¶ 14, 288 P.3d at 120. An error is plain if it is obvious and so undermined the fundamental fairness of a trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Dominguez-Castor*, 2020 COA 1, ¶ 85, 469 P.3d 514, 529. Prosecutorial misconduct is plain error only if it is "flagrantly, glaringly, or tremendously improper." *Id.* at ¶ 86, 469 P.3d at 529 (quoting *Domingo-Gomez*, 125 P.3d at 1053).

### 2.     Voir Dire

¶ 41     Voir dire is not a constitutional right. Instead, it is a tool that the parties use to reveal and address bias in potential jurors.

15

*People v. Garcia,* 2022 COA 144, ¶ 18, 527 P.3d 410, 416. Regardless, a prosecutor engages in prosecutorial misconduct during voir dire when the prosecutor misstates the law or intentionally uses voir dire to present factual matter that the prosecutor knows will not be admissible at trial or to argue the prosecution's case to the jury. *People v. Krueger,* 2012 COA 80, ¶ 50, 296 P.3d 294, 305-06; *People v. Adams,* 708 P.2d 813, 815 (Colo. App. 1985).

¶ 42      Here, Teague argues that the prosecutor diminished the beyond-a-reasonable-doubt standard by comparing its weight to whether to accept a job offer. The supreme court has held that analogies to the beyond-a-reasonable-doubt standard are unhelpful. *See Tibbels v. People,* 2022 CO 1, 501 P.3d 792.

¶ 43      In *Tibbels,* the court provided the jury with an improper analogy to the beyond-a-reasonable-doubt standard that encouraged the jury to analogize the standard to a nonlegal, crack-in-the-foundation illustration. *Id.* at ¶ 50, 501 P.3d at 801. The supreme court held the trial court's analogy was improper because it was reasonably likely that the jury understood the court's

statements to allow a conviction based on a standard lower than that of beyond a reasonable doubt.  *Id.* at ¶ 53, 501 P.3d at 802.

¶ 44 Here, the prosecutor compared the decision to find Teague guilty beyond a reasonable doubt to the level of importance when searching for a job.  Because the defense did not object, we review for plain error.  However, while we find *Tibbels* helpful, this case was tried before the supreme court announced *Tibbels*.  Therefore, we look to other authorities to assist us in our analysis.

¶ 45 In *People v. Cevallos-Acosta*, 140 P.3d 116, 123 (Colo. App. 2005), a division of this court held that the prosecutor's discussion of reasonable doubt during voir dire, which included buying a house as an example, did not constitute plain error when it occupied a small part of the transcript, the prosecutor did not make similar arguments during closing, and the jury was properly instructed as to the definition of reasonable doubt.  Here, the prosecutor's analogizing beyond a reasonable doubt to accepting a job offer was a small part of the lengthy voir dire and trial.

¶ 46 Additionally, the trial court properly instructed the jury on the definition of beyond a reasonable doubt.  The court's instructions, agreed on by the parties, corrected any potential error resulting

from the prosecutor's alleged misconduct during voir dire. Further, because the trial occurred before *Tibbels* was decided, any error by the trial court was not obvious.

¶ 47 Thus, the brief analogy during voir dire, even if erroneous, when considered with the correct jury instructions provided by the court, does not rise to the level of "flagrantly, glaringly, or tremendously improper" so as to undermine the fundamental fairness of the trial and therefore does not rise to the level of plain error.

### 3. Opening Statement and Closing Arguments

¶ 48 Teague argues that the prosecutor misstated the facts and added personal opinion, which resulted in reversible prosecutorial misconduct.

¶ 49 In considering Teague's claim, we must first review whether the prosecutor's statements were improper. We then address whether any improper prosecutorial remarks warrant reversal. *See Domingo-Gomez*, 125 P.3d at 1048; *Harris v. People*, 888 P.2d 259, 265–67 (Colo. 1995). In making this determination, we analyze the four statements Teague challenges, including the language used, the context, and whether defense counsel objected.

¶ 50    While a prosecutor is "free to strike hard blows," prosecutors are not "at liberty to strike foul ones." *Domingo-Gomez,* 125 P.3d at 1048 (quoting *Wilson v. People,* 743 P.2d 415, 418 (Colo. 1987)). Overzealous advocacy that undermines an impartial trial by contravening ethical standards cannot be permitted. *Harris,* 888 P.2d at 265.

¶ 51    Here, in opening statement, the prosecutor asserted that Teague reached into the bag he was carrying during the assault and pulled out a screwdriver, stabbed Mills in the head, and fractured his bone. The defense did not object to this characterization. Teague argues that the claim misstated the evidence because the prosecutor did not present evidence that Teague had pulled a screwdriver from the bag that he used to break Mills's bone. The prosecution repeated this view in closing arguments, saying that Mills's skull had been fractured, and the paramedic felt bones crunching. Defense counsel objected to the claim made in the closing argument. However, the trial court overruled this objection because the statement was based on trial testimony and reasonable inferences from it, as we discussed above.

¶ 52    Teague also argues the prosecution improperly bolstered the credibility of the State's witnesses during closing arguments. However, the prosecution's statement that the State's DNA expert had "no motive other than to . . . tell . . . the truth" did not improperly bolster the credibility of the witness. An expert is legally obligated to tell the truth, and the defense did not object to this characterization of the witness's testimony.

¶ 53    Teague also argues that the prosecutor improperly asked the jury to hold him accountable. The defense did not object to the statements Teague contends constitute prosecutorial misconduct. We thus review this alleged prosecutorial misconduct for plain error. *Domingo-Gomez*, 125 P.3d at 1048.

¶ 54    Here, the prosecution called for the jury to hold Teague accountable during its opening statement and closing and rebuttal closing arguments. Teague relies on *People v. Buckner*, 2022 COA 14, 509 P.3d 452, to argue that the prosecution engaged in misconduct. That reliance, however, is misplaced, as *Buckner* is distinguishable.

¶ 55    In *Buckner*, a division of this court held that the prosecutor's consistent calls for the jurors to "do justice" for the victim

constituted reversible misconduct. *Id.* at ¶ 42, 509 P.3d at 461.
The court emphasized that it was improper because a prosecutor
may not "pressure jurors by suggesting that guilty verdicts are
necessary to do justice for a sympathetic victim." *Id.* at ¶ 40, 509
P.3d at 461 (quoting *Marko*, ¶ 221, 434 P.3d at 660).

¶ 56    The prosecutor's comments here were not improper. Calls to
hold defendants accountable are permissible when made
"immediately after arguing that the evidence established . . . guilt."
*People v. Tran*, 2020 COA 99, ¶ 68, 469 P.3d 568, 578. Here, the
prosecutor asked the jury to hold Teague accountable and send a
message to the community only after discussing the evidence, and
immediately after doing so.

¶ 57    Further, the prosecutor here did not solely ask the jury to do
justice for a sympathetic victim. Instead, the prosecutor's
comments were brief and small parts of the prosecution'soverall
argument. Accordingly, this case is similar to *People v. Garcia*,
2021 COA 80, ¶ 40, 495 P.3d 362, 371, *aff'd*, 2023 CO 30, 531
P.3d 1031, where a division of this court held that the "prosecutor's
appeal to justice was so minimally prejudicial that reversal is not

required." In any event, because the comments were so brief, any prosecutorial error was not prejudicial.

¶ 58  Therefore, because the prosecutor asked the jury to hold Teague accountable after discussing the evidence, and the comments were only a small part of their larger argument, the comments were not improper. Consequently, we are not persuaded that any prosecutorial misconduct that may have occurred rises to the level of being flagrantly, glaringly, or tremendously improper.

## E. Sentencing Hearing

¶ 59  Teague also argues that we should vacate his sentence and remand for a new sentencing hearing because the record does not contain the transcript of that hearing. We disagree.

### 1. Standard of Review

¶ 60  We review de novo whether the record is sufficient to enable appellate review. *Hoang v. People*, 2014 CO 27, ¶ 38, 323 P.3d 780, 787.

### 2. Analysis

¶ 61  If a party believes that the appellate record is incomplete or inaccurate, it must correct the deficiency under C.A.R. 10. *People v. Ray*, 2012 COA 32, ¶ 6, 302 P.3d 289, 292. Under C.A.R. 10, if a

transcript of the evidence or proceedings at a hearing or trial is unavailable, the parties may file a statement of the evidence or proceedings. C.A.R. 10(e). Further, if there are any differences between the parties regarding whether the record truly discloses what occurred in the trial, or if a portion of the record is not in the trial court's possession, the differences must be submitted to and settled by the trial court. C.A.R. 10(g)(1).

¶ 62 Nevertheless, reversal is required when a defendant can show that an incomplete record "visits a hardship" on the defendant and prejudices the appeal. *People v. Killpack*, 793 P.2d 642, 643 (Colo. App. 1990) (quoting *United States v. Valdez*, 861 F.2d 427, 431 (5th Cir. 1988)). However, if a party fails to attempt to reconstruct the record as required under C.A.R. 10, that party may not complain that the record is inadequate. *In re Marriage of McSoud*, 131 P.3d 1208, 1211 (Colo. App. 2006); *Halliburton v. Pub. Serv. Co. of Colo.*, 804 P.2d 213 (Colo. App. 1990).

¶ 63 Here, Teague filed a timely notice of appeal after he was sentenced on August 27, 2021. However, on November 23, 2022, the court reporter filed an affidavit with this court explaining that, due to technical difficulties, the recording device had not worked,

and a transcript of the sentencing hearing could not be produced. Counsel moved to supplement the record, but this court vacated the motion to supplement, directing Teague to seek relief in the trial court under C.A.R. 10(g)(1). Teague took no action for ten months, but he now argues the record is inadequate and that he will be prejudiced without a new sentencing hearing. Teague argues that settling the record is an insufficient substitute. However, under the rule, the parties must attempt to settle the record before arguing the record is inadequate and prejudicial. Here, Teague failed to follow through on his obligation to settle the record in the trial court.

¶ 64   Therefore, Teague has not demonstrated prejudice from the absence of a transcript of the sentencing hearing in the record, and we decline to remand for a new sentencing hearing.

### 3.   The Mittimus

¶ 65   The People contend that the record is unclear as to whether the trial court intended to impose consecutive or concurrent sentences. The minute order and register of actions indicate that the trial court imposed concurrent sentences. However, each mittimus shows consecutive sentences. These inconsistencies

24

present an unclear record as to whether the trial court imposed consecutive or concurrent sentences.  Therefore, we remand to the trial court to clarify the mittimus.

### III.   Disposition

¶ 66     The judgment is affirmed, and the case is remanded to clarify the mittimus.

JUDGE TOW concurs.

JUDGE DUNN concurs in part and dissents in part.

JUDGE DUNN, concurring in part and dissenting in part.

¶ 67    I agree with the majority with one exception.  In my view, the prosecution presented insufficient evidence to prove a serious bodily injury beyond a reasonable doubt.  For this reason, I would vacate David Teague's first degree assault conviction and remand for entry of a second degree assault conviction and resentencing.  Thus, I respectfully dissent from Part II.B.2 of the majority's opinion.

¶ 68    As relevant here, "[a] person commits the crime of assault in the first degree" when "he causes serious bodily injury to any person by means of a deadly weapon."  § 18-3-202(1)(a), C.R.S. 2024.  While different types of injuries may constitute a serious bodily injury, the prosecution's sole trial theory was that Teague broke or fractured Slade Mills's skull after assaulting him with a screwdriver.  *See* § 18-1-901(3)(p), C.R.S. 2020 (identifying "breaks" and "fractures" as serious bodily injuries).

¶ 69    The problem is that the prosecution presented no evidence that Mills actually suffered a broken or fractured bone.  To illustrate, no doctor testified that Mills suffered a broken or fractured bone.  The prosecution didn't introduce any medical

26

records, x-rays, or other imaging results from the hospital evidencing a break or fracture (or other serious bodily injury). And while Mills testified that he was "dizzy" and received "quite a few stitches," he never testified that he sustained a broken or fractured bone. This absence of direct evidence stands in contrast to cases that have concluded the prosecution presented sufficient evidence of a break or fracture. *See People v. Daniels*, 240 P.3d 409, 410-12 (Colo. App. 2009) (noting sufficient evidence of break or fracture included "[v]arious tests" that "revealed that the victim had a fracture to the ribs"); *People v. Jaramillo*, 183 P.3d 665, 667, 670-72 (Colo. App. 2008) (rejecting sufficiency challenge to serious bodily injury element of second degree assault because nurse practitioner who treated the victim "testified that the victim suffered fractured cartilage in her nose"); *People v. Rodriguez*, 888 P.2d 278, 288-89 (Colo. App. 1994) (rejecting sufficiency challenge to serious bodily injury element of first degree assault because physician who treated the victim testified that the victim "had suffered a non-dislocated fracture of a portion of his femur").

¶ 70    True, the prosecution introduced a photo of Mills's injury and the lay testimony of the responding paramedic. To be sure, the

27

photo shows a deep and significant gash in Mills's head. While I in no way minimize the seriousness of the head wound, that's all the photo shows. The photo shows no bones, let alone a broken or fractured bone. That leaves only the paramedic's brief testimony that he "felt some bones crunching" after "press[ing] on" Mills's wound. The paramedic, however, was not qualified as an expert, offered no opinion on whether Mills sustained a broken or fractured bone, and didn't testify that he saw any breaks or fractures. And "some bones crunching" — whatever that means — is not a medical diagnosis. *Cf. Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 996-97 (10th Cir. 2019) (explaining that "a lay witness is competent to testify concerning those physical injuries and conditions which are susceptible to observation by an ordinary person," but when injuries "require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts") (citation omitted); *Franklin v. Shelton*, 250 F.2d 92, 97 (10th Cir. 1957) (concluding lay witness was not competent to testify about her son's broken ribs and punctured lung because she was not capable of observing those injuries).

¶ 71    Given the lack of any evidence that Mills suffered a bone break or fracture, I can't conclude that the evidence presented — even giving the benefit of every reasonable inference to the prosecution — was "substantial and sufficient" enough for a reasonable jury to conclude, beyond a reasonable doubt, that Mills suffered a broken or fractured bone. *McBride v. People*, 2022 CO 30, ¶ 38. And because the prosecution only pursued the "breaks" or "fractures" theory (and didn't, for example, present any evidence supporting a "substantial risk of serious permanent disfigurement" theory), § 18-1-901(3)(p), C.R.S. 2020, the prosecution failed to present substantial and sufficient evidence to prove that Mills suffered a serious bodily injury.

¶ 72    By concluding otherwise, it seems that the majority considered the injury Mills *could have* experienced from the screwdriver attack. But to determine whether a serious bodily injury occurred, the actual injury proved at trial controls, not the risk generally associated with the type of conduct or injury in question. *See People v. Vigil*, 2021 CO 46, ¶¶ 33-35. And, ultimately, "[a] verdict cannot rest on guessing, speculation, conjecture, or a mere

modicum of relevant evidence." *McBride*, ¶ 38; *see also People v. Donald*, 2020 CO 24, ¶ 19.

¶ 73     For these reasons, and because it's undisputed that Mills suffered a bodily injury, I would vacate the first degree assault conviction and remand with directions to enter a second degree assault conviction and resentence Teague accordingly. *See People v. Dominguez*, 568 P.2d 54, 55-56 (Colo. 1977) (vacating first degree assault conviction and directing entry of second degree assault conviction because "[a]ll the elements of the lesser included offense . . . were proven" at trial).